**STATE of Missouri, Plaintiff-Respondent,**

v.

**Kelly NETZER and Jeff Netzer, Defendants-Appellants.**

Nos. 10874, 10875.

Missouri Court of Appeals, Southern District, Division Two.

March 16, 1979.

John D. Ashcroft, Atty. Gen., Weldon W. Perry, Jr., Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

John A. Watkins, Greenfield, for defendants-appellants.

MAUS, Judge.

Kelly Netzer was charged in separate cases with cultivating and growing marijuana on the Westle Place and growing marijuana on the old Bartling Place. Jeff Netzer was charged in a separate case with cultivating and growing marijuana on the old Bartling Place. Kim Jeffreys Netzer (wife of Kelly Netzer) was charged in a separate case with cultivating and growing marijuana with no specification of location other than Dade County. By agreement the four cases were consolidated and tried before a jury. The jury found Kim Jeffreys Netzer not guilty. The jury found Kelly Netzer and Jeff Netzer guilty of the charged offenses in respect to the old Bartling Place. No verdict was returned on the charge against Kelly Netzer in respect to the Westle Place (which charge was amended during trial to refer to the R. Netzer Place). The state then dismissed this charge. Kelly Netzer and Jeff Netzer appeal. The cases have been consolidated for briefing and opinion.

 With emphasis under point IV (asserting in general terms the insufficiency of the evidence) the defendants attack the credibility of the testimony of Brad Westlake. Westlake was a colleague of defendants. He was arrested for selling marijuana to an undercover agent. Initially he assumed sole responsibility for growing the marijuana in question. After considerable interrogation, he recanted and implicated the defendants in this case. He cooperated with the authorities in making another case. He did receive favorable treatment from the authorities. His testimony provides the link between that marijuana and the defendants. Irrespective of any individual attitude concerning Westlake's testimony, his credibility was for the jury. In view of the verdicts, this court must view the evidence most favorable to the state and consider favorable inferences to be drawn from this evidence rejecting any evidence to the contrary. *State v. Evans*, 545 S.W.2d 694 (Mo.

App.1976). A summary of the evidence, so viewed, follows.

Westlake was originally from Iowa. He had considerable experience with and knowledge of drugs, as that term is used in the context of this case. He came to Missouri to act as "roady" for a band. For a period of time he lived at the Westle Place with Kelly Netzer, Kim Jeffreys Netzer and another individual. He left at the request of the owner (Kelly's father). While living at the Westle Place he smoked a lot of pot.

Westlake's testimony was that in February he, Kelly and Kim went to the R. Netzer place, turned the soil and planted marijuana seeds at a location not visible from the road. Westlake and Kelly returned on four or five occasions to look at the plants and on one occasion broke clods and pulled weeds. When the authorities visited the tract April 23 or 24 they pulled 1800 to 1900 plants approximately 8 to 20 inches in height.

Westlake's further testimony was that about March 1 he, Kelly and Jeff went to the old Bartling Place. Each selected a separate plot and turned the soil and planted marijuana seeds in their respective plots. Westlake talked to them about the marijuana at that time. When the authorities visited the tract May 7 they pulled marijuana plants from each of the plots. It was estimated there were 1000 plants on the tract, six to eight inches in height.

Kelly Netzer testified. He said Westlake was mad at the Netzer family because he was forced to move; Westlake damaged the dwelling that Kelly was improving and with his fist broke the windshield in Kelly's car. Kelly did not testify concerning whether or not he cultivated or grew marijuana.

Jeff Netzer also testified. He said he knew what he was accused of, but he had never grown marijuana. He also said he wouldn't know marijuana if he saw it. But, he said he had seen no marijuana at the R. Netzer or old Bartling Place. He had been to the old Bartling Place a long time ago. He first said he knew of Westlake, but later said he didn't know him very well.

Defendants' first point is that there is no statute prohibiting the growing or cultivation of marijuana. By argument they assert that the process of statutory construction necessary to reach such a prohibition is too intricate to find it was the intent of the legislature to prohibit such acts and, inferentially, the prohibition is too vague. A statute will withstand such attack if it is " 'sufficiently explicit, in its description of the acts, conduct or conditions required or forbidden, to prescribe the elements of the offense with reasonable certainty, fix an ascertainable standard of guilt, and make known to those to whom it is addressed what conduct on their part will render them liable for its penalties, and not be so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " *State v. Crawford,* 478 S.W.2d 314, 317 (Mo.1972), U.S. reh. den. 409 U.S. 1051, 93 S.Ct. 536, 34 L.Ed.2d 505.

§ 195.020 of the Uniform Controlled Substances Act (Chapter 195, RSMo 1969, V.A.M.S.) provides: "It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, distribute, or compound any controlled or counterfeit substance . . .." By definition, § 195.010(19) "manufacture" includes production. By further definition, § 195.010(28) "production" includes the manufacture, planting, cultivating, growing or harvesting of a controlled substance.

We are in agreement with defendants to the extent of considering the language and structure of the Act to be less than a model of clarity in several respects. The same may be said of many enactments, for example the Internal Revenue Code. However, the fact that an act requires more than a quick glance for full comprehension does not cause it to be invalid. *People v. Latsis,* 578 P.2d 1055 (Colo.1978). "Because it is necessary to refer to other subchapters in order to determine the exact nature of the offense charged does not make the penal statute unconstitutionally vague." *United States v. Little,* 321 F.Supp. 388 (D.C.Del.1971). The provisions of the Act, a comprehensive code, must be construed together. *Welborn v. Southern Equipment Company,* 386 S.W.2d 432 (Mo.App.1964). § 195.020 does by statutory construction forbid cultivating or growing marijuana. *Patty v. State,* 260 Ark. 539, 542 S.W.2d 494 (1976); *Bedell v. State,* 260 Ark. 401, 541 S.W.2d 297 (1976).

Defendants' second point is that their motion for acquittal should have been sustained because the state did not prove that the marijuana was grown for other than personal use. This argument is based upon § 195.010(19) which is the definition of manufacturing and contains the following language: "means . . . except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use . . .." Defendants' argument fails for two reasons.

First, § 195.180 of the Act provides: "In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of [the] law, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this law, and the burden of proof of any such exception, excuse, proviso or exemption, shall be upon the defendant." The burden of proof of the alleged exception was upon defendants. *State v. McAllister,* 468 S.W.2d 27 (Mo. 1971); *State v. Zimpher,* 552 S.W.2d 345 (Mo.App.1977).

Second, the claimed personal use exception applies only to "preparation and compounding" and not to cultivating and growing. *Patty v. State,* supra; *Bedell v. State,* supra.

Defendants offered an instruction using the term "manufactured" rather than "cultivated and grew" and requiring the jury to find the defendant manufactured marijuana for other than his own use. Defendants' third point is error in refusing this instruction and giving verdict directing instructions using the terms "cultivated and grew". Defendants in their brief did not as required by Rule 84.04(c) set forth the instructions under consideration. We are

therefore not required to consider this allegation of error. *State v. Sanders,* 541 S.W.2d 530 (Mo. banc 1976); *State v. Crowell,* 560 S.W.2d 889 (Mo.App.1978). Nevertheless, we have examined the proffered instruction and find that it placed the burden upon the state to prove the inapplicability of an exception which did not pertain to the charge. It was not error for the court to refuse such an instruction which did not correctly declare the applicable law. *State v. McCoy,* 530 S.W.2d 8 (Mo.App. 1975).

■ The defendants also allege error because the verdict directing instructions used the terms "cultivated and grew" rather than "manufactured". It is true MAI–CR 14.10 provided as alternative choices for the submission of the prohibited act the terms used in § 195.020 such as "possessed" or "manufactured." Of course, if an applicable instruction is provided in MAI–CR the use of another instruction is error, its prejudicial effect to be judicially determined. Rule 20.02(e). We do not necessarily construe the use of "cultivated and grew," terms included in the statutory definition of "manufactured," to be a deviation from MAI–CR. Had the instructions used "manufactured," as so used that term is a legal or technical term, and it should have been defined in statutory language. *State v. Smith,* 342 S.W.2d 940 (Mo.1961); *State v. Hurvey,* 544 S.W.2d 593 (Mo.App.1976). Even if the use of "cultivated and grew" was a deviation, which we need not decide, the verdict directing instructions submitting the offense in the language of the statutory definition were not prejudicial and certainly did not result in manifest injustice. *State v. Holt,* 465 S.W.2d 602 (Mo.1971); *State v. Abram,* 537 S.W.2d 408 (Mo. banc 1976); *State v. Sykes,* 559 S.W.2d 643 (Mo.App.1977).

■ Defendants' fourth allegation of error is that there was insufficient evidence to support convictions for growing and cultivating marijuana. They assert that proof of such offenses is not satisfied by their acts of turning the soil and planting seeds, which is the only activity established at the old Bartling Place. This by necessity requires a construction of the Act and examination of the meaning of those words.

"The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *State v. Kraus,* 530 S.W.2d 684, 685 (Mo. banc 1975). Considering the Act and in particular § 195.020 with its associated definitions, there should be no doubt but what the legislature intended to proscribe any activity which would make marijuana available for uncontrolled use.

An accepted meaning of the word "grow" as an intransitive verb is to "have vegetal or animal life" or as a transitive verb "to cause to have vegetal or animal life." Webster's Third New International Dictionary. It does not require, as defendants imply, the necessity of growth to maturity or harvest. An accepted meaning of the word cultivate is "to prepare for the raising of crops; . . . till . . . to protect and encourage growth" Webster's Third New International Dictionary.

■ Charges arising from the growth of marijuana have received but little attention in the appellate courts. Our research has developed the following cases. A plant growing in a pot was evidence of prohibited cultivation. *Box v. State,* 541 P.2d 262 (Okl.Cr.1975). Watering three plants constituted cultivation. *State v. Lucks,* 56 Haw. 129, 531 P.2d 855 (1975). Five plants in a garden constituted possession. *State v. Rutherford,* 4 Or.App. 164, 477 P.2d 911 (1970). Similar evidence supported a conviction of planting and cultivating. *People v. Gorg,* 45 Cal.2d 776, 291 P.2d 469 (1955). Twelve plants in eight pots supported a conviction for cultivation. *Capehart v. State,* 559 P.2d 861 (Okl.Cr.1977). Seventy plants supported a conviction of manufacturing. *Graybeal v. State,* 13 Md.App. 557, 284 A.2d 37 (1971).

Under the definition above and authorities cited, we believe a jury could have

reasonably found the defendants did cause the marijuana plants to have vegetal life and did encourage and promote their growth.

 As defendants urge, it was necessary that the defendants were aware of the character of the seeds. In other words, that they knew they were planting marijuana and were not acting under the belief they were planting something else, such as radishes. This knowledge need not be shown by direct evidence but can be established by reasonable inference. *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975); *State v. Davis*, 515 S.W.2d 773 (Mo.App. 1974).

 In regard to charges of possession, the awareness may be inferred from the intentional possession of the substance. *State v. Young*, 427 S.W.2d 510 (Mo.1968); *State v. Virdure*, 371 S.W.2d 196 (Mo.1963). There is no doubt that Westlake knew they were planting marijuana. Kelly obviously knew as he too had seeds. Westlake discussed the marijuana with Kelly and Jeff at the time of planting. The requirement of awareness was submitted to the jury. We believe a jury could, as it did, reasonably find that each of the defendants acting in concert with Westlake in selecting a plot, turning the soil and planting the seeds was aware he was planting marijuana.

 Defendants' next contention pertains to the refusal of the trial court to declare a mistrial based upon alleged improper questions of the prosecutor. The first alleged incident occurred when the prosecutor elicited from a defense witness the fact he had received a suspended sentence for selling marijuana. No objection to this was voiced at the trial and none may be made now. The second occurred when Kelly was asked if he grew the "marijuana out there." He answered, "what marijuana are you referring to?" An objection was then made and sustained. No further relief was asked. A similar question was asked Kim and when counsel said, "Now, your Honor," the court sustained an objection, no answer was given and counsel then com-

pleted his statement and asked for a mistrial. No other relief was sought. Granting a mistrial is a drastic remedy within the discretion of the trial court and should not be granted unless any prejudice created cannot be removed by other means. *State v. Harris*, 547 S.W.2d 473 (Mo. banc 1977); *State v. Hoskins*, 569 S.W.2d 235 (Mo.App. 1978). Under the circumstances in question, we cannot say the trial court abused its discretion in not granting a mistrial. *State v. Smith*, 355 Mo. 59, 194 S.W.2d 905 (1946); *State v. Tygart*, 531 S.W.2d 47 (Mo. App.1975).

 Defendants next urge error by the trial court in failing to grant four motions in limine. The first motion on behalf of Kelly sought to limit the evidence to his activities on the old Bartling Place and Westle Place. The charge against Kelly referring to the Westle Place was amended to refer to the R. Netzer Place. The second motion pertained to Kim and she was acquitted. The third motion in behalf of Jeff sought to limit the evidence of his activities to the old Bartling Place. The evidence was so confined. At the close of the evidence the trial court instructed the jury to disregard any evidence about marijuana being grown on the old Westle Place. Under the circumstances of this case, to establish defendants' awareness of marijuana, it was proper to show defendants' activities connected with marijuana even though they were not charged with an offense at a particular place. *State v. Williams*, 539 S.W.2d 530 (Mo.App.1976). The trial court did not err in overruling these motions.

 Defendants' fourth motion sought to limit any evidence of activities to the Roland Netzer Place, as that was the only place mentioned in the state's disclosure. Amended informations were filed seven days before trial specifically alleging the old Bartling Place. No continuance was sought nor surprise claimed. The exclusion of evidence as a sanction for non-disclosure is discretionary with the trial court. The defendants have not demonstrated any fundamental unfairness or abuse of that discretion. *State v. Helms*, 559 S.W.2d 587 (Mo.

App.1977); *State v. Moten,* 542 S.W.2d 317 (Mo.App.1976).

The judgments are affirmed.

BILLINGS, P. J., and HOGAN, J., concur.