STATE of Missouri,
Plaintiff-Respondent,

v.

Kenneth Glenn LIGHT,
Defendant-Appellant.

No. 13328—Division Two.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 13, 1985.

Motion for Rehearing or Transfer
Denied March 6, 1985.

Application to Transfer Denied
April 2, 1985.

Ronald J. Kaden, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Robert L. Swearingen, Frank Rubin, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

CONVICTION AFFIRMED: SENTENCE VACATED AND CAUSE REMANDED

HOGAN, Judge.

Defendant Kenneth Glenn Light was convicted of manufacturing marijuana in violation of § 195.020.1, RSMo 1978,[1] and his punishment was assessed at imprisonment for a term of five years. Defendant appeals.

The plantation of marijuana was found on a 40-acre farm in Phelps County. The farm was the property of defendant's mother, Hazel Rosalee Light. According to his mother, the defendant did not live on the premises. Her testimony was that during the period here involved "... he come in off and on—I [couldn't] tell you just exactly...."

The defendant questions the sufficiency of the evidence to support the verdict. The State, having had a verdict, is entitled to have this court consider the evidence and the reasonable inferences to be drawn therefrom in that light most favorable to the State, rejecting all evidence and inferences which do not support the judgment of conviction. *State v. Netzer,* 579 S.W.2d 170, 173 (Mo.App.1979); *State v. Evans,* 545 S.W.2d 694 (Mo.App.1976). So considered, the evidence is that two members

---

**1.** References to statutes and rules are to RSMo 1978 and to Missouri Rules of Court (14th ed. 1983), except that references to the sentencing provisions of the Criminal Code are to those statutes as they stood amended when RSMo (Supp.1983) was published.

of the State Highway Patrol and a deputy sheriff of Phelps County conducted an aerial search for cultivated marijuana on July 19, 1982, in Phelps County. They discovered marijuana growing on the Light farm. A search warrant was obtained and several officers went back to the farm, which is about eight miles south of Rolla. A deputy read the search warrant to the defendant's mother. Thereafter a search was conducted. The defendant greeted the officers as they entered upon the premises, advising them that "You're going to find some marijuana—some plants." The officers did indeed find some plants—marijuana, planted in the ground, in a washing machine tub and in buckets. Paths to the small plantations had been cut with a lawn mower. Scarecrows had been hung to protect the plants from marauding birds. One plant had been hung upside down. One of the troopers testified that a common method of drying marijuana is to "hang the plant upside down and let it dry."

The defendant accompanied the officers as they searched the premises. As they approached and came to the place where the scarecrow had been constructed, there were no plants. The defendant remarked "They done beat you to this." One of the troopers asked who "they" were; the defendant answered "[t]he deer." As the officers were about to complete their search, one of the deputy sheriffs "stepped in some defecation." The deputy asked if the defendant had found it necessary to defecate outside the house; defendant replied "It keeps the deer away."

This same deputy then remarked "You sure are planning to be high." Light's response was: "It's all for my own use. It has to last all winter." As the officers were preparing to leave the premises, one of the deputies went back to the farm house to contact the defendant's mother. The defendant asked if his mother "[was] in any trouble." He was told that his mother was in no trouble "if she didn't know about the marijuana." Defendant assured the officer "It's mine—all mine."

Certainly, meticulous recital of all the evidentiary detail would show that the jury could have reached another conclusion; counsel has spent a good deal of his time arguing that the defendant's brother, an unfortunate man who, in his mother's phrase "took an overdose of pills and he hasn't been right since," could have planted the marijuana, because the brother has a penchant for digging up small plants and trees and transplanting them. We can only respond by saying that although we regret the brother's misfortune, this court does not weigh the evidence, but determines only whether there was proof from which a jury could have found the defendant guilty as charged. *State v. Kelly,* 539 S.W.2d 106, 109 (Mo. banc 1976).

In *State v. Netzer,* 579 S.W.2d at 175–76, and more recently in *State v. Poole,* 683 S.W.2d 326 (1984), this court held that the offense of manufacturing marijuana consists of two elements: 1) causing the marijuana plants to have vegetal life and to encourage and promote their growth, with 2) an awareness of the character of the controlled substance. We reaffirm those decisions, but they were not intended to include all the acts which might constitute the "manufacture" of marijuana. Section 195.020.1 denounces the manufacture of any controlled substance. Section 195.010(21) defines "manufacture" to include "production" of any controlled substance; production is defined by § 195.010(30) and "includes the manufacture, planting, *cultivation,* growing, or *harvesting* of ... a controlled substance." (Our emphasis.) Marijuana grows in the wild, to be sure, but what the officers found in this case were literally potted plants. If we may accept the recitation of the record, marijuana plants were found potted in 1) an old washtub; 2) a washing machine washtub; 3) half an empty oil drum, and 4) a plastic bucket. One plant had been pulled up and hung out to dry. Such facts are sufficient to support a jury's inference of cultivating and harvesting; defendant's inculpatory response to the officer's remark about "planning to be high" is sufficient to warrant an inference that he knew

the character of the substance he was cultivating. The evidence amply supports the judgment of conviction.

Defendant's appellate counsel has briefed and argued four points of error, after a fashion. The "Points Relied On" contain no citation of authority whatever. This is a violation of Rule 84.04(d), of course, but given the quality of criminal briefs we usually receive, counsel's failure to cite authority is little or no hindrance to a resolution of the appeal on its merits.

■■■ We have already answered Point IV, which is that the evidence is insufficient to sustain the judgment of conviction. Closely tied to this point is counsel's argument that defendant's pretrial motions to suppress should have been sustained. The point is set out verbatim marginally.[2] The point requires little, if any, discussion. In the first place, the defendant has asserted no ownership nor any possessory interest in the premises searched; the record affirmatively demonstrates that he had none. Therefore, because the disputed governmental intrusion did not impinge upon a constitutionally protected interest of the defendant, he may not challenge the legality of the search on Fourth Amendment grounds. *United States v. Bentley,* 706 F.2d 1498, 1505[6] (8th Cir.1983), cert. denied —— U.S. ——, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). Moreover, as far as the record shows with certainty, the marijuana plantations were found in open fields, to which the protection of the Fourth Amendment does not extend. *Oli-*

*ver v. United States,* 466 U.S. ——, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984); *State v. Simpson,* 639 S.W.2d 230, 232 (Mo.App.1982). Finally, although counsel has not chosen to put any of the exhibits before us, the description of the premises to be searched seems to have been sufficient to satisfy the requirements of § 542.-276.6(5). The point is wholly without merit.

■■■ A further point is that the court erred in failing to grant defendant a new trial because two members of the jury concealed disqualifying prejudice on voir dire examination. We have examined this point, but we conclude the defendant's evidence is far too tenuous to warrant such a conclusion as a matter of law. The determination of the veniremen's qualifications was a matter for the trial court in the exercise of sound judicial discretion and its determination should be rejected only upon a clear showing of an abuse of discretion. *State v. Olinghouse,* 605 S.W.2d 58, 69–70[14] (Mo. banc 1980); *State v. DeClue,* 400 S.W.2d 50, 57[12] (Mo.1966). It may be said that judicial discretion has been abused only if reasonable minds could not differ as to the propriety of the action taken by the trial court. *Shirrell v. Missouri Edison Co.,* 535 S.W.2d 446, 448–49[2] (Mo. banc 1976). We are thoroughly convinced there was no abuse of discretion here, and the point is without merit.

■■■ The defendant's final verbose point, set out marginally[3] is well taken and, con-

---

**2.** "The trial court erred in overruling defendant's pre-trial motions to suppress evidence based on a search warrant obtained by police officers in this matter. The objections were repeated at trial. The objectionable material was all based on a search warrant which was in fact based on a prior search of the property without search warrant and which search warrant further failed to declare with specificness the place to be searched 'as nearly as may be.' The evidence should have been excluded because the items of evidence were illegally seized in violation of defendant's reasonable expectations of privacy and guarantee against unreasonable search and seizure under the Fourth and Fourteenth Amendments to th[e] Constitution of the United States, and Article I, Section 15, of the Missouri Constitution, and Section

542.276 R.S.MO. The court should have rejected such evidence and its failure to do so was prejudicial error."

**3.** "The trial court erred in that it sentenced defendant under R.S.Mo. 558.016, extended terms for persistent or dangerous offenders, yet failed to follow the procedure set out under the aforesaid statute under R.S.Mo. 558.021. The court failed to make findings of fact to warrant a finding beyond a reasonable doubt by the court that the defendant was a prior offender or persistent offender. In a jury trial such as this, the factual finding must be made prior to the submission of the matter to the jury. By failing to make this factual finding and by submitting instructions to the jury that deprived the jury of the right to assess punishment in this case, the

trary to the State's argument, is properly preserved for review. The thrust of defendant's point is the trial court sentenced him as a persistent offender without making the finding required by § 558.021.1(3). In oral argument, the defendant's counsel suggested there might be further error in the sentencing procedure. There may be, but we decline to allow the defendant to broaden his objection on appeal. We cannot convict a trial court of error on a ground never presented to that court as such. *State v. Stevens*, 467 S.W.2d 10, 18[4], 50 A.L.R.3d 96, 106 (Mo.1971), cert. denied 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971); *State v. Quick*, 639 S.W.2d 880, 882–83[3] (Mo.App.1982); *State v. Lindsey*, 630 S.W.2d 191, 195 (Mo. App.1982).

The information filed charged the defendant with feloniously manufacturing marijuana in violation of § 195.200.1(1) and further charged in apt language that the defendant was a persistent offender within the meaning of § 558.016.3. The prior felonies pleaded were second-degree burglary and stealing. The State alleged that defendant was convicted of the first prior felony on December 22, 1976, and was again convicted of the same offense on May 25, 1977. On January 6, 1983, defendant was formally arraigned and pleaded not guilty to the information.

At the close of the State's case-in-chief, proof of conviction of the prior offenses was made by presenting certified copies of the judgment of conviction to the trial court, out of the presence of the jury. These documents, numbered Exhibits 17 and 18, were handed to defendant's counsel and to the defendant. Counsel was given time to confer with the defendant. He did so, and proceeded—without comment—to present defendant's case.

During the course of his testimony, the defendant testified that various inculpatory statements he had made were actually false. He made those statements because he believed his brother had grown the marijuana and he wanted to protect his brother. Defendant's cross-examination then proceeded thus:

"Q. Why are you telling the jury this at this time?

A. Because I'm under oath now.

Q. What were you in prison for?

A. Burglary and stealing.

Q. And how long ago was that?

A. It was back in '77 I think—'76— something like that.

Q. Were there two different occasions when . . .

A. Yes, they was.

Q. . . . you were convicted?

A. Yes, sir.

Q. But you only served one term?

A. Yeah.

Q. Both of them were for burglary and stealing, is that correct?

A. Yes, it was."

\* \* \* \* \* \*

The question of punishment was not submitted to the jury; only his guilt or innocence was submitted. The jury found the defendant guilty. A hearing was had at the time the defendant was sentenced; counsel for the defendant addressed the court as follows:

"I believe that the State adduced evidence at trial sometime before the case was submitted to the jury that the Defendant was a persistent offender in that he had been convicted of two prior felonies. Those two prior felonies being two separate occasions. I think it's unclear by looking at the docket sheet as to whether or not the Court made a finding of fact that warranted a finding beyond a reasonable doubt by the Court that the Defendant was a persistent offender."

Counsel went on to read the applicable statutes to the court; the State argued ". . . And the Court read those and did read

court deprived the defendant of his constitution right to a fair trial and to have the jury consider not only guilt or innocence, but also the right to assess and declare punishment. The failure of the trial court to so do constitutes prejudicial error, and the matter should be remanded to the trial court for a new trial."

into the record that the Court found Mr. Light to have been convicted, etc." The trial court apparently had no immediate recollection of the matter but believed it had made the requisite finding.

Very little comment on the sentence enhancement statutes is necessary. They have received scholarly attention from our colleagues at Kansas City in *State v. Thompson*, 629 S.W.2d 361 (Mo.App.1981), approved *State v. Thompson*, 629 S.W.2d 369 (Mo. banc 1982), and again in *State v. Davis*, 663 S.W.2d 301 (Mo.App.1983). We cordially agree with the views there expressed. The requirement of a finding imposed by § 558.021.1(1), is a procedural due process requirement. Our colleagues at St. Louis are in agreement. As they pointed out in *State v. Arbeiter*, 664 S.W.2d 566, 570[12][14] (Mo.App.1983), non-drug related offenses may provide a predicate for an enhanced sentence in a prosecution for violation of the provisions of Chapter 195, but it is the finding that defendant is a persistent offender which empowers the court to impose an enhanced sentence. *State v. Arbeiter*, 664 S.W.2d at 570[12].

We cannot discover any semblance of a finding in the record. Perhaps the trial court intended to dictate such a finding, but it does not appear. Enhancing a sentence without making the requisite finding that defendant is a persistent offender makes the sentence vulnerable to collateral attack. *Buford v. State*, 662 S.W.2d 581 (Mo.App.1983). A new trial is not necessary. The judgment of conviction is affirmed; the sentence is vacated and the cause is remanded for findings and for reimposition of sentence.

MAUS, P.J., and PREWITT, J., concur.