**STATE of Missouri, Plaintiff-Respondent,**

v.

**Evert G. FRANKS, Defendant-Appellant.**

No. 13710.

Missouri Court of Appeals, Southern District, Division Two.

April 2, 1985.

John Sims, Ruyle, Sims & Lampo, Neosho, for defendant-appellant.

John Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Presiding Judge.

By amended two-count information filed in the Circuit Court of McDonald County, defendant Evert G. Franks was charged with manufacturing marijuana in violation of § 195.020.1, RSMo 1978,[1] and with possession of marijuana in violation of the same statute. The State further pled a prior conviction of possession of marijuana which occurred in December 1974. A jury found the defendant guilty on both counts. His punishment was assessed at confinement in the county jail for one year for manufacturing marijuana; he was fined $1,000 for possession of marijuana. Defendant appeals, contending only that there is no substantial evidence to support either judgment of conviction.

The State, having had verdicts, is entitled to have this court consider the evidence and the reasonable inferences to be drawn therefrom in that light most favorable to the State, rejecting all evidence and inferences which do not support the verdict. *State v. Netzer,* 579 S.W.2d 170, 173 (Mo. App.1979); *State v. Evans,* 545 S.W.2d 694 (Mo.App.1976).

So taken and in briefest sketch and outline, the facts are that on June 18, 1983, defendant and his wife lived at Goodman, in McDonald County. Goodman is a town of about 1,000 people. A city marshal, on routine patrol, discovered marijuana plants growing in the defendant's back yard. The back yard was enclosed by a fence about six feet high, constructed of $1'' \times 4''$ lumber. The fence was interrupted at one corner by a hog wire panel. The back yard was guarded, or at least attended, by a Doberman pinscher.

The area was kept under surveillance for several days because the marijuana plants appeared to have been cultivated. The grass was mowed, except for a small garden plot which had been tilled. The plants were "clumped" at various places—shown in evidence by photographs we do not have before us—but otherwise stood out, as it were, as the only thriving weeds in an otherwise well-manicured back yard.

On June 23, warrants were obtained. Several area police officers went to the defendant's residence to execute the warrant about midnight. One group of officers stationed themselves at the rear door; another group knocked at the front door. The officers at the front door identified themselves, calling out loudly to the defendant. The defendant attempted to run out the back door, but was advised by the

---

**1.** References to statutes and rules are to RSMo 1978 and to Missouri Rules of Court (14th ed. 1983), except where otherwise specifically noted.

officers waiting there that they were peace officers and had a warrant for his arrest. One of the officers at the front door then "heard a door shut, heard movement back through the house, and the front door opened and [defendant] came out on the front porch."

It was explained to the defendant that the officers had both warrants for his arrest and to search the premises. Defendant was asked to secure his Doberman. An officer followed the defendant from the front to the rear of the house. The two passed through a living room, kitchen and utility room to the rear of the residence. As the officer following the defendant walked through the house, he directed the beam of his flashlight from side to side. In the kitchen, there was a "green Coca-Cola tray" which contained marijuana leaves sitting on a cabinet over the stove. The jury was shown a picture of the drying tray, State's Exhibit 3—which again is not before us—which contained (by trial time) very well dried marijuana leaves.

Defendant and the officer then went to the yard back of the house. The warrant for defendant's arrest was read to him and he was given a *Miranda* warning. Defendant himself read the search warrant. About 20 relatively small marijuana plants were recovered and confiscated. Other facts will be noted in the course of the opinion.

The defendant was found guilty on Count I—the manufacture of marijuana—as an accessory. The State's main instruction was MAI–CR.2d 2.12, appropriately adapted. The jury was instructed on the nature of accessorial liability by the first paragraph, which was the first paragraph of MAI–CR.2d 2.12 and was required to find that: 1) during the period from June 19 through June 23, 1983, the defendant or another person manufactured marijuana, and 2) defendant was aware of the character of the substance and knew that he or another person was manufacturing it. The instruction continued in the language of MAI–CR.2d 2.12, predicating a finding of guilt upon the hypothesis that the defend-ant acted together with or aided another with the purpose of promoting or further-ing the offense of manufacturing marijua-na.

■ Able and conscientious counsel for the defendant strenuously insists there is no evidence to warrant this submission, but counsel has considerably over-complicated the crime charged in Count I. In *State v. Netzer*, 579 S.W.2d at 175–76, and more recently in *State v. Poole*, 683 S.W.2d 326, 329 (Mo.App.1984), this court has held that the offense of growing marijuana consists of two elements: 1) causing the marijuana plants to have vegetal life and to encourage and promote their growth, with 2) an awareness of the character of the controlled substance. We reaffirm those decisions, but state once again that they were not intended to and do not include all the acts which might constitute the "manufacture" of marijuana. Section 195.020.1 denounces the manufacture of any controlled substance. Section 195.010(21) defines "manufacture" to include "production" of any controlled substance; production is defined by § 195.010(30) and "includes the manufacture, planting, *cultivation*, growing, or *harvesting* of ... a controlled substance." (Our emphasis.) Courts know that the various subspecies of cannabis sativa grow in the wild without cultivation, but the plants confiscated in this case showed positive signs of cultivation and harvesting. The grass in the defendant's back yard had been carefully mowed so as to avoid damaging the cannabis plants; there was an oscillating sprinkler in the vicinity of some of the plants, and one of the officers noticed that one group of plants had been "topped" or primed. There "was numerous amounts of stems ... where the topping had been completed," to use the officer's words. This court also knows "the dried leaves and flowering tops of the pistillate hemp plant that yield cannabin and are sometimes smoked in cigarettes for their intoxicating effect" is the everyday pedestrian definition of marijuana. Webster's Ninth New Collegiate Dic-

tionary, p. 727 (1983). There is ample evidence of both cultivation and harvesting.

■■■ But, counsel argues, there is no evidence that the defendant *knew* the plants were marijuana plants. Several times the State offered evidence of defendant's prior conviction of possession of marijuana to show knowledge, subject to a limiting instruction modeled after MAI–CR.2d 3.60. The trial court refused to admit the evidence. Perhaps the evidence of the prior conviction was admissible, but its exclusion does not destroy the State's case. There is no doubt that the State had the burden to prove beyond a reasonable doubt that the defendant had knowledge of the presence and character of the marijuana. However, knowledge may be inferred from possession, that is, dominion and control over the area where the contraband is found. *United States v. Lochan,* 674 F.2d 960, 966[7] (1st Cir.1982). *Lochan* involved an automobile. Applying this principle to dwellings, our courts have held that when joint control of a residence exists, possession of the contraband can be constructive and need not be exclusive. Knowledge may then be inferred from the constructive possession and any circumstances tending to prove guilty knowledge, including evidence of his conduct and mannerisms, declarations, admissions, contradictory statements made by him, as well as his access to the area where the contraband was found. *State v. Dethrow,* 674 S.W.2d 546, 550[7] (Mo.App.1984).

In this case, some effort was made to show that the defendant and his wife were having marital difficulties and consequently defendant was away from home. The jury was not obliged to believe all the defendant's evidence, and this court does not weigh the evidence. See *State v. Morris,* 639 S.W.2d 589, 591[2] (Mo. banc 1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). The defendant was at his residence asleep when the warrants were executed during the night of June 23–24, 1983; officer Ebbinghaus had gone to the defendant's residence at some time after "[t]he latter part of May" and had found defendant's wife at the residence. Further, as Ebbinghaus pointed out, the defendant's name was on the mailbox. One of the defendant's witnesses, a Robert Walker, testified that he was defendant's neighbor and that he knew from observation that the defendant resided upon the premises where the marijuana was found for at least 3 years prior to the summer of 1983. There was ample evidence to warrant a finding that the residence where the marijuana was found was occupied by the defendant and his wife and that the defendant shared control with his wife.

■■ Quite aside from any prior convictions, there were incriminating circumstances tending to show defendant's knowledge and awareness of the nature of the marijuana. The presence of an inordinately elaborate privacy fence around the back yard and the presence of a formidable dog obviously intended to repel observation is one such circumstance; another is defendant's statement, made when he was arrested, that he knew nothing whatever about the plants in his back yard, "that it was his wife's garden." A jury could have inferred from the circumstances that the defendant was aware the plants in his back yard were marijuana plants.

■■ The defendant's further point in connection with Count I is that there is no evidence that he was guilty as an accomplice to the crime of manufacturing marijuana. We are cited only to § 562.041, which defines accessorial liability. Some substantive changes in the law were effected by the enactment of § 562.041, but these changes need not be discussed here.[2] It is still true to say that any evidence fairly showing affirmative participation by the defendant in aiding another to commit the crime is sufficient to support a convic-

---

**2.** See Comment, Accomplice Liability Under the 1979 Missouri Criminal Code, 44 Mo.L.Rev. 233 (1979).

tion as an accomplice. See, e.g., *State v. Hills*, 645 S.W.2d 57, 59 (Mo.App.1983). As that case states, conviction does not require that a defendant personally perform all the acts constituting the elements of a crime. The defendant's theory seems to have been that his wife, and possibly another person, were responsible for the cultivation of marijuana in his back yard. If such were the case, we have the opinion defendant's participation was shown by provision of enclosed premises, suitably equipped with a watchdog. However, if we are to look for an affirmative act, the record permits the inference that the defendant was alone in the house when he was taken in custody, and that the marijuana had been recently watered. A jury could have inferred that defendant watered the plants on the evening of June 23, 1983, thereby aiding the commission of the offenses. The evidence was sufficient to support the verdict as to Count I of the information.

Counsel's arguments concerning the sufficiency of the evidence to support the conviction of possession are also unavailing. There was evidence that the green leafy substance—identified by experts as marijuana—found in the "Coca-Cola tray" in the kitchen had been freshly picked. The defendant had ready access to the drying marijuana leaves and fled when the officers appeared. We have already noted that the defendant was in constructive possession of the marijuana. In combination these circumstances were sufficient to warrant a finding that defendant possessed the marijuana found in the house. *State v. Kerfoot*, 675 S.W.2d 658, 661–62 (Mo.App. 1984). Because the evidence showed that another man was frequently on the premises, and possibly defendant's wife was present, it was not error to submit defendant's criminal liability by using MAI–CR.2d 2.12. See Notes on Use to MAI–CR.2d 6(c).

The judgments are affirmed.

PREWITT, C.J., and MAUS and CROW, JJ.