STATE of Missouri, Respondent,

v.

Terry Ray VINZANT, Appellant.

No. WD 36854.

Missouri Court of Appeals,
Western District.

July 29, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1986.

Application to Transfer Denied
Oct. 14, 1986.

Cenobio Lozano, Jr., Contract Public Defender, Harrisonville, for appellant.

Lee A. Bonine, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, C.J., and SHANGLER and KENNEDY, JJ.

CLARK, Chief Judge.

Terry Ray Vinzant was charged by information with the offense of murder in the second degree, § 565.004, RSMo. 1978 [1] (erroneously specified in the information as § 559.020, RSMo. 1969) and, in a jury trial, he was convicted and sentenced to a term of twenty-five years. On this appeal, he presents six points of alleged trial error.

The victim in the case was Lola Vinzant, appellant's mother. At the time of the events relevant to the case, Lola was living in a trailer home situated in a complex of similar homes in Pleasant Hill. Appellant was also staying in the trailer temporarily while on leave from the United States Navy. On August 24, 1983 at approximately 2:30 in the afternoon, appellant stopped by the trailer residence of neighbors Terry and Jacquelyn Betts. He told the Betts he was waiting for his mother to return home from work and had been unable to enter the Vinzant trailer because his key would not unlock the door. In the

---

**1.** Section 565.004, RSMo. 1978 was repealed effective 10/1/84 and was replaced by § 565.021, RSMo. Cum.Supp.1984.

observation of Mrs. Betts, appellant appeared to be normal as he spent a brief time watching television and in assisting Terry Betts to start his automobile as he left for his evening employment. At about 3:00 p.m., appellant left the Betts' home stating that he would try his key on the rear door of the Vinzant trailer.

A few minutes past 3:00 p.m., appellant appeared at the next door trailer residence of Kathryn Jamison (also referred to in the evidence as Kate Davis), in a highly agitated state. He exclaimed that someone had killed his mother and demanded that the police be called. According to Mrs. Jamison, Vinzant was a "raving maniac," he was cursing, screaming, pounding on furniture and "was just acting wild, plumb wild." Mrs. Jamison made the call to the police at 3:35 p.m.

The first officer to arrive at the scene at 3:38 p.m. was Alex McCauley. He entered the Vinzant home and found Lola Vinzant dead on the trailer floor, an obvious victim of a homicide. He called for assistance and Officer Mark A. Rohr responded followed by Sergeant James McLaughlin. Rohr and McLaughlin also entered the Vinzant trailer and viewed the body. The area of the trailer was secured for the subsequent processing of the crime scene but no evidence was immediately observed suggestive of appellant's implication. Some inquiry was made of the neighbors and Sergeant McLaughlin then directed that appellant be placed under arrest. In later testimony, McLaughlin said his decision to arrest Vinzant was based on the fact Vinzant was acting "wild," that he, McLaughlin, had been given to understand Vinzant "was maybe the last one" to see Lola alive.

Vinzant was given his Miranda [2] rights and he was taken in handcuffs to the Pleasant Hill police station where he was placed in a cell. The arrest was recorded at 4:18 p.m., some forty-five minutes after the call had been made by Mrs. Jamison reporting the discovery of the body. Interrogation of Vinzant at the police station commenced at 5:40 p.m. and lasted about three hours.

Later he was questioned for two hours at the office of the Cass County Sheriff. All of these sessions were recorded on tape which was subsequently transcribed. Although appellant maintained his innocence throughout the questioning, information was obtained which subsequently led the police to discover items of physical evidence which were used against appellant at trial. During the questioning, the police also took appellant's clothing, which was subjected to analysis, and samples of his blood and hair were obtained. On the evidence so acquired, the jury found appellant guilty of the crime.

## I.

In his first and most troublesome point on appeal, Vinzant contends the evidence which led to his conviction was improperly acquired and erroneously admitted because it was the product of a warrantless arrest made without probable cause to believe he was the perpetrator of the homicide. The claim was properly asserted in a motion to suppress heard immediately before the trial commenced, it was renewed at trial and reasserted in the motion for a new trial. An understanding of the issue requires a review of the evidence applicable to the probable cause question.

At the hearing on the motion, testimony was given by the police officers, McCauley, Rohr and McLaughlin, by another officer, Lester Smith, who was involved in the interrogation of appellant, and by appellant. A summary of the facts known to the officers at the time they arrested Vinzant is as follows, subject however to the restriction of the facts to those assumed to be true according to the suppression hearing testimony. On the night of August 23/24, 1983, the sound of an argument between Lola Vinzant and a man was overheard by Officer Rohr who lives in a house some 100 feet from the Vinzant trailer. Rohr was acquainted with appellant but he was unable to identify the male voice engaged in the argument as that of appellant. Rohr

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

had previously been told by the victim that appellant had frequently come home without leave and she wanted him picked up the next time it happened. Some previous disturbance complaints had dispatched the police to the Vinzant trailer, apparently associated with appellant's absences from his service duty without leave. Rohr said his suspicion of appellant was particularly aroused because appellant seemed agitated and irritated by the presence of the police at the scene of the crime.

Sergeant McLaughlin testified that he too was aware of the problems concerning appellant's absence without leave and the victim's concern and fear about appellant. He said his decision to arrest appellant was based on the suspect's "wild" conduct and appearance, the fact that appellant was the one who had called the police and his assumption that appellant was the last person to have seen the victim. Of particular and critical significance in evaluating probable cause was McLaughlin's reliance on information from Officer Rohr and the neighbor, Kathryn Jamison (referred to by McLaughlin as Miss Davis) that appellant had been heard to have been engaged in an argument with his mother at the trailer home the night before the body was discovered.

■ The probable cause standard for arrest is derived from the Fourth Amendment and its common law antecedents and requires the presence of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense. *Gerstein v. Pugh*, 420 U.S. 103, 111–112, 95 S.Ct. 854, 861–62, 43 L.Ed.2d 54 (1975); *State v. Purnell*, 621 S.W.2d 277, 285 (Mo. 1981). The lawfulness of an arrest without a warrant is determined by application of the probable cause standard. *State v. Garrett*, 627 S.W.2d 635, 641 (Mo. banc 1982), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). The remedy for an illegal arrest is the suppression of the evidence obtained as a result of the arrest. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Williams*, 604 F.2d 1102 (8th Cir. 1979); *State v. Hicks*, 515 S.W.2d 518, 522 (Mo.1974).

■ The contention that evidence has been obtained by unlawful search or seizure must be made by a motion to suppress the evidence in advance of trial and the question must be kept alive by timely objection and preservation in a motion for new trial. *State v. Fields*, 442 S.W.2d 30, 33 (Mo.1969). The proponent of a motion to suppress evidence has the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure. *State v. Johnson*, 670 S.W.2d 882, 885 (Mo.App.1984).

■ Although under the statute, § 542.296.6, RSMo. 1978, it is the state's burden at a suppression hearing to show by a preponderance of the evidence that the motion should be overruled, it is the defendant's burden to establish his own standing to assert violation of Fourth Amendment rights. *State v. Baker*, 632 S.W.2d 52, 53 (Mo.App.1982). The validity of a search or seizure and the admissibility in evidence of the fruits of the search or seizure present issues collateral to the issue of guilt and are to be tried independently. *State v. Yowell*, 513 S.W.2d 397, 402 (Mo. banc 1974).

■ A trial court's ruling on a motion to suppress evidence prior to trial is interlocutory in nature and the court may therefore receive additional evidence later and change its ruling. *State v. Howell*, 524 S.W.2d 11, 19 (Mo. banc 1975). The purpose of the rule which requires defense counsel to repeat his objections to the evidence at trial is to provide the trial judge an opportunity to reconsider his prior ruling against the backdrop of the evidence actually adduced at trial. *State v. Fields*, 636 S.W.2d 76, 79 (Mo.App.1982).

■ With the foregoing precepts as a guide, we turn to the facts of the present case under which appellant contends his initial arrest less than one hour after the victim's body was found was without probable cause. The standard, restated, is

whether the officers, and Sergeant McLaughlin in particular, had sufficient information at that time of a reasonable trustworthy quality to warrant a person of prudence and caution in believing that Vinzant had killed his mother. Some of the facts recited by Sergeant McLaughlin may obviously be rejected out of hand as indicative of any guilt. The "wild" appearance of appellant would equally well have been attributable to the shocking discovery of his mother's body as would appellant's insistence that the police undertake a search for the assailant. Even were it Vinzant who called the police, a fact about which McLaughlin was obviously mistaken, prompt notification to authorities upon the discovery of a crime is certainly no indication of guilt but points to the contrary. The statement that appellant "was maybe the last one" to see the victim was sheer speculation. At the time of the arrest, there had been no ascertainment of the time of death and therefore no basis on which to know the accountable period for determining appellant's whereabouts.

The sole information the officers possessed at the time of the arrest arguably casting suspicion on appellant as the culprit was the record of previous trouble between appellant and his mother over his unauthorized absences from his military service and the report of an argument overheard between appellant and his mother the night before the body was discovered. Although this quantum of facts is minimal to establish more than mere suspicion, the cases caution that probable cause to arrest is determined on practical considerations of everyday life and not on the niceties of legal technicalities. *State v. Kroll*, 682 S.W.2d 78, 82 (Mo.App.1984). If the officers were reliably informed of these facts, previous trouble between appellant and his mother and an argument engaged in by the two the night on which the killing apparently occurred, the arrest must be held to have been lawful. Certainly the single fact critical to a balanced judgment on the issue of probable cause was the argument overheard in which appellant was identified as a participant.

The evidence presented to the trial court in the hearing on the motion to suppress consisted of testimony by the police officers previously named and by Vinzant. The officers told of the facts summarized above, but only Sergeant McLaughlin described the report to him by Kathryn Jamison of having identified appellant as the man overheard engaged in the argument with the victim. The trial court found the arrest without a warrant to have been based on probable cause and therefore overruled the motion to suppress the physical evidence acquired as a consequence of appellant's custodial interrogation. For the reasons previously stated, that ruling cannot be found to have been erroneous. The point of claimed error does not end here, however, because of subsequent developments in the case and the tentative nature of a ruling on a pre-trial suppression motion. *State v. Fields, supra.*

As the trial opened, appellant renewed his objection to the appellant's "voluntary" statement for the reasons and on the grounds set out in the motion to suppress. The objection was overruled and, at appellant's request, the court recognized the objection as a continuing one. Before the exhibits to which the present point on appeal is directed were received in evidence, trial testimony by Officer Rohr, Sergeant McLaughlin and Kathryn Jamison was presented by the state. Officer Rohr testified that he had overheard the victim arguing with someone around 11:30 the evening before the discovery of the body the next day, but he could not tell what the argument was about or who the person was with whom Lola Vinzant was arguing. Sergeant McLaughlin gave no testimony that anyone had reported to him the occurrence of an argument as overheard by Officer Rohr. Finally, Kathryn Jamison, allegedly the source of Sergeant McLaughlin's suppression motion information identifying appellant as the male who had been arguing with the victim, testified that she had heard no voices at all from the Vinzant trailer, only "thumping sounds."

It is apparent from the foregoing summary of trial testimony that one of the bases for determining whether Sergeant McLaughlin had probable cause to arrest appellant was whether he was in fact told by Mrs. Jamison that she had overheard appellant and the victim arguing the night of the crime. Quite obviously, if Mrs. Jamison heard no argument, she could not truthfully have made the report Sergeant McLaughlin described. The issue was not presented, however, and was therefore not ruled by the trial court, because Mrs. Jamison was not asked whether she gave Sergeant McLaughlin the report which he related. The question is not, as appellant seems to pose it, whether Mrs. Jamison overheard the argument, but whether she told Sergeant McLaughlin that she did.

The difficulties which preclude sustaining appellant's first point on appeal are twofold. The point as stated charges error by the trial court in overruling the defendant's motion to suppress the various items of evidence. As the previous discussion has demonstrated, that ruling was not in error because the evidence presented at the suppression motion hearing supports the ruling. Appellant seems to assume that the composite of facts, including the evidence presented at trial, relates back to place the motion ruling in doubt. The trial error was not the ruling on the suppression motion but the admission in evidence at trial of the exhibits once the evidence revealed facts from which it could be determined that the arrest was unlawful. The point on appeal is simply not stated so as to entitle appellant to relief.

The second problem with the appeal, even assuming a broader intendment to the statement of the point than its contents describe, is that the error was not presented to the trial court by a timely and specific objection or motion, and the trial court did not have the opportunity to decide the fact issue. At the time the continuing objection based on the suppression motion grounds was lodged, Mrs. Jamison's evidence had not been given. Her account conflicting with that of Sergeant McLaughlin was not known to the trial judge and presumably was undiscovered by appellant. Once that testimony came in, however, appellant should seasonably have renewed his objection to the evidence in question permitting a further development of the facts outside the hearing of the jury and a re-examination by the court of the prior tentative ruling on the suppression motion and objection. *State v. Howell, supra; State v. Fields, supra.* Here, the record shows no later objection by appellant mentioning at all the point now presented. The same may be said of the motion for new trial which referred only to error in ruling on the suppression motion and made no particular reference to the evidence raising doubt about probable cause for arrest.

■ To summarize, the evidence at the suppression motion hearing coupled with the evidence at trial conflict as to what knowledge the arresting officers actually had when appellant was taken into custody. Resolution of that conflict was for the trial court and may not be decided here. Because appellant did not provide the trial court with the opportunity to rule by a sufficient and timely objection, the issue is not preserved. These deficiences preclude granting appellant relief on his first point of alleged trial error.

## II.

Appellant's second point repeats to some extent the shortcoming of the first in that it also asserts error by the trial court in failing to sustain the motion to suppress at the pretrial hearing. Ordinarily, a ruling on a pre-trial motion to suppress may not be asserted as a ground of error on appeal. This follows because the pre-trial motion to suppress evidence and the admission at trial of the challenged evidence are not two distinct procedures. *State v. Trimble*, 654 S.W.2d 245, 254 (Mo.App.1983). The real damage is not done until the evidence is introduced in the trial of a case for consideration by a jury. *State v. Howell, supra* at 19.

■ Appellant argues that his motion to suppress the statements taken from him

after his arrest without a warrant should have been sustained because he was not effectively advised of his rights to remain silent and to the presence of counsel and such waiver of rights as was given was involuntary. The case presents an apt illustration of the reason why a ruling on a pre-trial suppression motion may not alone be advanced as a basis for error. The statements given the police by Vinzant were tape recorded and transcribed and were marked as exhibits, but they were never offered or received in evidence nor were they read to the jury. Even if the ruling on the suppression motion was in error, a point we do not reach, appellant can claim no prejudice because the challenged evidence did not form any part of the jury's consideration of appellant's guilt.

Appellant notes that the prosecuting attorney in the opening statement summarized what appellant had said in accounting to the police for his conduct and whereabouts and undertakes to equate this with the introduction of evidence. The two are not the same. The opening statement describes the anticipated evidence the party expects to produce. The mere fact that no evidence is later offered to support some of the facts described in the opening statement does not constitute error sufficient to require reversal of a conviction unless it can be shown directly or by inference that counsel making the statement did not intend to produce the evidence or knew that he could not present evidence supporting the statement. *State v. Browner,* 587 S.W.2d 948, 953 (Mo.App.1979). The test essentially is one of good faith. There is no suggestion here, let alone any basis to conclude, that the prosecutor in this case referred to the defendant's recorded statement with knowledge that the recording would not or could not be introduced as evidence.

The trial court's ruling on the pre-trial motion to suppress appellant's recorded statement as involuntary or coerced is not a point of error on which any prejudice has been shown because the statement was not offered or received in evidence. Use of the contents of the statement by the prosecutor in his remarks to the jury are not shown to have been in bad faith nor was appellant demonstrably prejudiced thereby.

### III.

Appellant next asserts that the court erred in admitting in evidence certain photographs including several of the victim showing puncture wounds, lacerations and marks. Appellant says the photographs should not have been admitted because they were not relevant to proof of any issue in the case. They did not connect the defendant with the crime, they did not show the position of the body when the crime was discovered and they did not corroborate or explain the testimony of any witness or refute any defense presented by appellant.

Candidly appraised, several of the photographs in question here are indeed gruesome, repugnant and shock provoking because they show the victim's upper chest and head with a gaping laceration across the throat. Other photographs of the corpse showing abrasions, puncture and stab wounds are at least offensive to any person of normal sensibilities. In all, the court admitted six photographs of this nature out of some two dozen tendered by the state. Arguably, several of the photographs may have served to corroborate the evidence given by the medical examiner, but in the main, the only evidentiary purpose justifying admission of the exhibits was to prove the cause of death.

The cause of death by violent means was not a disputed issue in the case, but it was nonetheless an element of the state's case. The fact that the cause of death is not disputed or that the accused may offer to stipulate the question does not affect the right of the state to offer and have received evidence which is relevant and material to proof required for conviction. *State v. Clemons,* 643 S.W.2d 803, 805 (Mo. banc 1983). The trial court has broad discretion in the admission of photographs, *State v. Guinan,* 665 S.W.2d 325, 331 (Mo. banc 1984), *cert. denied,* 469

U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984), and admission of exhibits will result in error only upon a showing that discretion has been abused. *State v. Weekley,* 621 S.W.2d 256, 260 (Mo.1981). The decision whether potentially prejudicial or inflammatory evidence should be admitted lies within the sound discretion of the trial court which is in a better position to balance the probative value and danger of the evidence. *State v. Shaw,* 636 S.W.2d 667, 672 (Mo. banc 1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). It is foreign to our concept of criminal jurisprudence to suggest that relevant evidence should be inadmissible merely because it tends to prejudice the defendant. *State v. Battle,* 661 S.W.2d 487, 493 (Mo. banc 1983), *cert. denied,* 464 U.S. 1306, 104 S.Ct. 567, 78 L.Ed.2d 538 (1984).

The photographs of the victim in this case derive their shocking and gruesome attributes from the nature of the crime itself, the virtual decapitation and physical abuse inflicted. It was appropriate and relevant for the state to prove the cause of death as was graphically, if unpleasantly, demonstrated by the photographs. Considering the deference due the trial court, we are unable to find an abuse of discretion in the decision to admit these photographs from among the quantity which the state offered.

Appellant also complains of one additional photograph showing a toilet stool and its contents. That exhibit was neither gruesome nor shocking and did serve to corroborate the state of disarray found in the victim's home. There was no error in admitting that exhibit.

### IV.

The fourth point of error which Vinzant raises complains generally of the failure by the trial court to sustain his motion for acquittal filed at the close of the evidence. He argues that the state failed to prove his guilt beyond a reasonable doubt and, specifically, that certain fingerprint evidence was suspect. The focus of appellant's contention on the fingerprint evidence requires some further statement of facts in the case.

On leads furnished to the police from the interrogation of Vinzant following his arrest, the police recovered a shopping bag which contained a pair of corduroy pants stained with blood, a sales slip from a TG & Y store and jean patches. The decedent's car was found abandoned on a country road approximately one mile from the location where the trousers were found. The corduroy pants were similar to those which appellant had been seen wearing earlier and analysis of the blood stains showed them to be the decedent's blood type. Because appellant was wearing new jeans when he was arrested, it was the state's theory he had purchased them at the TG & Y store, as evidenced by the sales slip, and had discarded the bloody garment. The socks defendant was wearing when he was arrested were blood stained, but the blood type could not be identified. Additional evidence introduced by the state included a comparison of defendant's fingerprints with latent prints recovered from the door handle of the victim's abandoned car and from articles in the Vinzant trailer home including a blood stained knife found on the victim's bed.

Appellant focuses his argument under this fourth point on the fingerprint evidence. He correctly points out that none of the witnesses, including the experts testifying as to fingerprint identification, could determine how long the prints had been on the articles or, in the case of the knife, whether the print was below the blood stains or imprinted coincidentally with the source of the stains. He also notes that all of the articles, including the automobile, were legitimately accessible to him prior to the crime. On these grounds, he argues that the circumstantial evidence was insufficient to justify submission because it did not exclude a reasonable hypothesis of innocence.

In reviewing a claim of insufficiency of the evidence to support a conviction, the state's evidence must be accepted as true and the state must be given the benefit of

all reasonable inferences, disregarding all evidence and inferences to the contrary. *State v. Meyer*, 694 S.W.2d 853, 855 (Mo. App.1985). Any fact can be established by circumstantial evidence, and while the circumstances must be such as are inconsistent with the person's claimed innocence, it is not necessary that they be absolutely conclusive of guilt and the evidence need not demonstrate an absolute impossibility of innocence. *In Interest of M A C*, 693 S.W.2d 225, 226 (Mo.App.1985). On a challenge to the sufficiency of the evidence, the function of the appellate court is only to determine whether there was proof from which a jury could have found the defendant guilty as charged. *State v. Light*, 686 S.W.2d 538, 540 (Mo.App.1985).

■ The evidence indicative of appellant's guilt has already been reviewed in this opinion and need not again be described in detail. Appellant's fingerprint was found on the knife which was an instrument used in the homicide. Blood was present on appellant's socks which he was wearing when he was arrested. A pair of pants similar to those appellant was seen to have been wearing were stained with blood and were found discarded in an area where the victim's car was abandoned. Appellant had purchased and was wearing new trousers connected to a sales slip found with the discarded and blood stained pants. Additional evidence showed some strain in the relations between appellant and his mother. The night of the crime, appellant was overheard to say he was going to stab someone and his conduct was aggressive if not bizarre.

Although appellant does offer an exculpatory interpretation of the fingerprints and correctly observes that the blood stained trousers were never proven to be his and there was no direct evidence by witnesses or by his own confession to prove that it was he who killed the victim, the argument merely demonstrates that the possibility of his innocence was not absolutely excluded by the circumstantial proof. The inferences to be accorded the evidence in this situation is a decision for the jury, not for the appellate court. On the authorities cited, the evidence was sufficient to permit the jury to reach its conclusion of appellant's guilt.

### V.

■ The next point on the appeal turns on one of the items of proof made in the state's case and mentioned in connection with the preceding point, the overheard remark by appellant that he was going to stab someone. The evidence came in during the questioning of the state's witness, Kenneth Ray Miller, Jr. The witness was describing a party at which appellant was present the evening in question and during which appellant drank beer and cognac and smoked marijuana. At some point in the evening, Miller drove appellant to his mother's trailer for the purpose of getting money to buy more beer. Miller remained outside, but overheard appellant argue with a woman, apparently Mrs. Vinzant, who appellant referred to as "you bitch" as he slammed the trailer door. Later at the party, Miller heard appellant talking to another man present saying that he was going to stab someone. Appellant moved for a mistrial at that point contending the evidence was irrelevant and falsely injected into the case the issue of appellant's character as a violent person.

On this appeal, appellant limits his claim of error to the contention that the evidence was not relevant in that there was no proven association between the remark and the crime with which appellant was charged. Review of the entire testimony of witness Miller confirms the assertion that appellant's statement about stabbing someone was not made in the context of any comments about the victim, or at any time proximate to an argument with the victim or, indeed, with reference to any possible victim or dispute. At best, the remark seemed to be in connection with some delusion by appellant that his military occupation included a license to perform executions.

The argument that the challenged evidence placed appellant's character in issue

is not tenable. The question is whether the state was entitled to have the jury learn of the statement and draw from it some inference of appellant's guilt in the crime involving a stabbing. It is clear that the homicide in this case occurred within less than twelve hours of appellant's remark that he was going to stab someone and that the victim in this case was in fact stabbed. The asserted deficiency in the item of evidence in question is that it may be characterized as ambiguous, that is whether that declarant was referring to his mother, to some other person or to no one in particular as a potential stabbing victim.

The fact that evidence may be susceptible of two or more inferences, some of which are inconsistent with the guilt of the accused, does not render the evidence irrelevant and inadmissible. So long as an inference consistent with guilt is reasonably deducible, the evidence is admissible. The resolution of the question as to which inference is to be drawn from such evidence is a question for the triers of fact. *State v. Campbell*, 655 S.W.2d 96, 101 (Mo.App. 1983). In this case, the jury verdict suggests that it drew from appellant's remark the inference that he had an intent that evening to stab his mother. The presence of other possible inferences and the ambiguity of the statement does not render the proof inadmissible or entitle appellant to the mistrial which he requested.

### VI.

In his final point, Vinzant contends that the verdict directing instruction was in error in hypothesizing the cause of the victim's death to have been by "stabbing, choking or strangling." He says there was no evidence that the cause of death was strangling or choking, much less that he committed either of these acts. Cited is the rule that when a crime may be committed by any of several methods, those submitted in the verdict directing instruction must be supported by the evidence. *State v. Shepard*, 442 S.W.2d 58, 60 (Mo. banc 1969).

The instruction as given was in conformity with the charge in the information which in turn reflected the various causes of death possible when the mutilated state of the corpse is considered. The evidence from the medical examiner was that injury was found to the hyoid and thyroid bones of the victim. Such injuries, she said, were consistent with application of pressure to the neck, most likely some form of strangulation. One of the factors causing death by asphyxiation was indicated by bruises on both sides of the jaw. Additionally, as noted earlier, the victim's throat was slit in virtually a decapitation. The evidence by the medical examiner adequately supported the alternate cause of death submissions as contained in the verdict director.

The judgment is affirmed.

All concur.