ACCEPTED
14-15-00149-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
4/23/2015 3:54:15 PM
CHRISTOPHER PRINE
CLERK

## No. 14-15-00149-CV

In The Court Of Appeals
For The First District Court Of Appeals
Houston, Texas

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
4/23/2015 3:54:15 PM
CHRISTOPHER A. PRINE
Clerk

## GLEN SUMNER,

*Appellant*

## V.

## BOARD OF ADJUSTMENTS OF THE CITY OF SPRING VALLEY VILLAGES, TEXAS, THE CITY OF SPRING VALLEY VILLAGE, TEXAS, ART FLORES

*Appellees*

ON APPEAL FROM THE 164TH DISTRICT COURT, HARRIS COUNTY, TX
TRIAL COURT CAUSE NO. 2013-30178 A
THE HONORABLE ALEXANDRA SMOOTS-HOGAN, PRESIDING

## BRIEF OF APPELLANT, GLEN SUMNER

Glen Sumner, Pro Se
8306 Leafy Lane
Houston, Texas 77055
Telephone: (713) 873-7285

April 23, 2015

# PARTIES AND COUNSEL

Plaintiff-Appellant:  Glen Sumner

Plaintiff-Appellant's counsel:  Pro Se
8306 Leafy Lane
Houston, Texas 77055
Telephone:  (713) 873-7285

Defendant-Appellees:  Board of Adjustments of the City of Spring Valley Villages, Texas, The City of Spring Valley Village, Texas, Art Flores,

Defendant-Appellees' counsel:  Andrea Chan
Olson & Olson, L.L.P.
2727 Allen Parkway, Suite 600
Houston, TX 77019
Facsimile:  (713) 533-3888

# TABLE OF CONTENTS

PARTIES AND COUNSEL………………………………………………………ii

TABLE OF CONTENTS ................................................................. iii

TABLE OF AUTHORITIES ............................................................ iv

STATEMENT OF THE CASE.............................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................2

ISSUES PRESENTED.......................................................................2

STATEMENT OF FACTS ...............................................................3

SUMMARY OF THE ARGUMENTS ....................................................7

ARGUMENT AND AUTHORITIES.....................................................9

    A. Legal Background, Standards of Review.....................................9

    B. Issues One by One.................................................................10

Issue One   Did the trial court err in ordering the case against Appellees to be severed from the original cause of action? ........................................................10

Issue Two  Did Sumner exhaust his remedies before requesting Writ of Certiorari pursuant to Texas Local Government code 211.011?........................14

Issue Three Did omissions in Sumner's prosecution of his request for Writ of Certiorari pursuant to . Gov't Code 211.011 Justify Dismissal for Want of Prosecution?.......................................................................................18

Issue Four  Does Plaintiff Have a Protected Property Interest?.........................19

Issue Five  Did Sumner Receive the Necessary Elements Due Course of Law? ………………………………………………………..232

Issue Six    To what extent are the Appellees immune from suit and liability for monetary damages? ........................................……………………….33

PRAYER .......................................................................................39

CERTIFICATE OF SERVICE…………………………………………….40

CERTIFICATE OF COMPLIANCE………………………………….......40

# TABLE OF AUTHORITIES

**Cases**

and *Fideicomiso de la Tierra v. Fortuno*, 604 F.3d 7 ................................... 9, 37, 38

*Bennett v. Planning Comm'n, City of Bryant, Ark.*, No. 4:09-CV-00315, 2010 WL 1417971, at *1–2 (E.D. Ark. Mar. 31, 2010) ........................................................35

*Borden v. Trespalacios Rice& Irrigation Co.*, 86 S.W. 11, 14 (Tex. 1905) .............35

*City of Dallas v. Vanesko*, 189 S.W.3d 769, 772 (Tex. 2006). .......................... 10, 26

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) ....................................33

*City of Houston v. Renault, Inc.,* 431 SW 2d 322, 326 (Tex 1968). .......................21

*City Of Wichita Falls, Plaintiff In Error, Vs. W. M. Mauldin, et ux., Defendants in Error*. 39 S.W.2d 859 at 861; 1931 Tex. App. Lexis 2064 ...................................20

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)...............................................22

*Davis v.City of Lubbock*, 326 S.W.2d. 699, 704 (Tex. 1959)...................................35

*Develo Concepts* 688 S.W.2d 790 (1984)...............................................................19

*Duenez I.d. at 693; F.P. Operating Partners, L.P. v. Duenez at 629* .......................12

*Duncan v. Calhoun City Nav. Dist.*, 28 S.W.3d 707, 710-711 (Tex App. –Corpus Christie 2000, pet. Denied) ...................................................................................11

*Fideicomiso de la Tierra v. Fortuno*, 604 F.3d 7 (1st Cir, 2010)...........................37

*Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970)................................9

*Horton v. City of Smithville*, 117 Fed. Appx. 345 (5th Cir. Tex. 2004) ...............9, 19

*In re State*, 355 S.W.3d 611, 614 (Tex. 2011); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007) ...........................................................11

*James A. Hansen v. The United States of America*; 65 Fed. Cl. 76; 2005 U.S. Claims LEXIS 93; 60 ERC (BNA) 1141 ................................................................22

*Lamar Corp. v. City of Longview*, 270 S.W.3d 609 ..............................................24

*Landers v. East Texas Salt Water Disposal Co.*, 248 S.W. 2d 731, 731 (Tex 1952). ...............................................................................................................................12

*Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) ....................11

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)............................9

*Owens Ryland Grp. v. White*, 723 S.W.2d 160, ...................................................9, 12

*Owens v. Owens*, 228 S.W.3d 721, 726 (Tex App –Houston 14th Dist] 2006, pet dism'd) .................................................................................................................13

*Pierce v. Reynolds*, 329 S.W.2d 76, 78-79 (Tex 1959) ..........................................11

*Private Real Property Rights Preservation Act Guidelines*...................................20

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 ............. 9, 21, 26

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) .......9

*Resource Investments, Inc. and Land Recovery, Inc v. The United States of America*, 85 Fed. Cl 447; 2009 US Claims Lexis 11 ..............................................36

*Ryland Grp. v. White*, 723 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1986, orig. proceeding). ...................................................................................11

*See Coastal States Gas Producing Co. v. Pate*, 309 S.W.2d 828, 833 (Tex. 1958).35

*See Southwest Paper Stock, Inc. v. Zoning Bd. of Adjustments of the City of Fort Worth*, 980 S.W.2d 802, 805 (Tex. App.—Fort Worth 1998, pet. denied)...........10

*See Texas Dept. of Heath v. Buckner,* 950 S.W. 2d 216, 219 (Tex. Civ. App.–Forth Worth 1977, no writ). ...........................................................................28

*Sumner v. Board of Adjustment of City of Spring Valley Village*, Civ. A. No H-12-12-551, 2013 WL 1336604, slip op. at 5 (S.D.Tex. Mar. 29, 2013) ....................19

*Whittington v. City of Austin*, 174S.W.3d 889, 897 (Tex. App.—Austin 2005, writ ref'd n.r.e.) .....................................................................................35

# STATEMENT OF THE CASE[1]

Statement of the Case:      This case originates from the appeal to district court of a decision of the Board to support issuing a certificate of occupancy and compliance for the lot adjoining Sumner's despite Sumner's claim that the work done diverted water flowing on his lot in violation of Section 13.01 of the zoning ordinance and section 11.086 b of the Texas Water Code. The Appellees had actual and constructive knowledge of Sumner's complaint that this would result when they issued the certificate of occupancy and compliance. By enabling Prichard to continue this violation without a public purpose the Appellees deprived Sumner the beneficial use of portions of his land in for the benefit of Prichard but not the public in violation of Article 1 sections 17 and 19 of the Texas Constitution.

Trial Court:      The Honorable Alexandra-Smoots Hogan, 164th Judicial District Court of Harris County, Texas.

Trial Court Disposition:      The trial court granted Appellees' Motion for Summary Judgment, Motion to Dismiss Art Flores and Motion to Dismiss Sumner's request for Writ of Certiorari

---

[1]Throughout this brief, unless the context indicates otherwise:
Appellant, Glen Sumner, will be referred to as "Sumner"
Appellee, Board of Adjustments of the City of Spring Valley Villages, Texas, will be referred to as "the Board."
Appellee, The City of Spring Valley Village, Texas, will be referred to as "the City."
Appellee, Art Flores, will be referred to as "Flores."
Rickie Prichard will be referred to as "Prichard."
Board, The City and Flores will be collectively referred to as "Appellees."
Sumner and Appellees will be collectively referred to as the "Parties."
Sumner's property at 8306 Leafy Lane will be referred to as "Sumner's Lot"
The property at 8302 Leafy Lane will be referred to as "Adjoining Lot"
Citations to the Clerk's Record are: "CR Page." For example, CR 2 means Clerk's Record page 2.
Sumner's 3rd Amended Petition sh

## STATEMENT REGARDING ORAL ARGUMENT

Appellant request oral arguments.

## ISSUES PRESENTED

**Issue One**     Did the trial court err in ordering the case against Appellees to be severed from the original cause of action?

**Issue Two**     Did Sumner exhaust his remedies before requesting Writ of Certiorari pursuant to Texas Local Government Code 211.011?

**Issue Three** Did errors or omissions in Sumner's prosecution of his request for Writ of Certiorari pursuant to Tex. Loc. Gov't Code 211.011 justify dismissal for want of prosecution?

**Issue Four**    Is the flow of surface water on Sumner's lot a property interest that is protected by Article 1 sections 17 and 19 of the Texas Constitution or Texas Water Code 11.086?

**Issue Five**    Did Sumner receive the necessary elements Due Course of Law for his claims arising in

     Claims arising in the Zoning Ordinance

     Claims arising Texas statues The Texas Constitution

**Issue Six**     To what extent are the Appellees immune from suit and liability for monetary damages?

# STATEMENT OF FACTS

A.    SUMNER'S PROPERTY INTERESTS

Sumner is a resident owner of his property at 8306 Leafy Lane. His water rights are inherent in ownership of this real property [CR 171]. The City of Spring Valley, Texas adopted a zoning ordinance in December 15, 1981 and the ordinance as repeatedly amended is in force. Regulation 231 § 13:01 ("Drain Regulation 231 § 13.01") contained therein and effective at all times material to this lawsuit reads as follows:

> "PROPERTY OWNER'S RESPONSIBILITY:  It shall be the responsibility of each owner or developer of property whether individual lot, lots, block or development to maintain the drainage patterns of adjacent property owners or landowners caused either by direct diversion of water on the land or by failure to adequately accommodate new or changed drainage patters as they develop. This prohibition shall not in any way effect the construction and maintenance of levees and other improvements to control floods and overflows in freshets, creeks, streams.  This section, however does not authorize any person to construct a canal, a lateral canal or ditch that obstructs a creek, bayou, gully, slough, ditch or other well-defined natural drainage." [*Id.*]

Sumner's Petition contains the web address of the City's Zoning Ordinance [*Id.*]. Sections 231 § 01.02.03.02 and 231 § 01.02.03.04 of the Zoning Ordinance (Compliance Rules 231 §§ 01.02.03.04 & 01.02.03.02) authorize Flores to issue a

certificate of occupancy and compliance only when he determines property improvements comply with all other provisions of the Zoning Ordinance.

## B. RELEVANT EVENTS BEFORE PRICHARD ACQUIRED THE ADJOINING PROPERTY

Clara Kessler ("Prior Owner") and her husband bought the Adjoining Lot when the Spring Oaks Section 3 subdivision was developed. The western boundary of Sumner's lot and the Adjoining Lot is Leafy Lane; the eastern boundary is Spring Branch Creek. The boundary of the flood control easement coincides with the top of a steep slope toward the creek herein after referred to as the "high bank"[*Id.*].

Between Sumner's house and the high bank his lot gently slopes toward the Adjoining Lot, on which the high bank had been receding from the creek due to natural erosion since the Subdivision was created. No similar erosion was occurring on Sumner's lot until the Prior Owner hired a contractor to mitigate her erosion. The contractor raised the Adjoining Lot with fill, thereby diverting surface water so as to move the erosion to Sumner's Property. In August, 2009 after several oral and a written request to correct the problem, her son had a perforated drain pipe installed on the Adjoining Lot near the boundary. This drain carried surface water from both properties to beyond the high bank, the damage was repaired and no further erosion occurred by the beginning of 2013 [CR 172].

C.      RELEVANT EVENTS AFTER PRICHARD ACQUIRED THE ADJOINING LOT

On January 11, 2013 after Prichard bought the Adjoining Property Plaintiff noticed that a construction crew removed the drain installed by the Prior Owner Plaintiff complained to Daniel O'Brien, the contractor in charge ("Contractor") and Bill Sweitzer the Landscape Architect ("Designer"). Designer responded by declaring that each owner is responsible for disposing of "his own water". His interpretation reflects the "Common Enemy Doctrine" of surface water drainage that does not apply in Texas, not the Natural Flow Rule that does apply. On January 14, 2013 Art Flores ("Flores") indicated that he shared the Designer's incorrect interpretation.[CR 173]

The Adjoining Lot was further elevated with fill dirt, which was purported by the Designer to be necessary to comply with a requirement imposed by Flores to drain water to the street. This serves no public purpose and it is inconsistent with the approval of drainage to the rear of other lots on the creek [CR 173].

Near the end of January 2013 Flores informed Sumner of an offer purportedly from Prichard that he described in one oral sentence. As described it would not bring the Adjoining Property into compliance with Drain Regulation 231 § 13.01.[CR 173]

On February 18, 2013 Flores informed Sumner that the City Attorney told him that by declining the offer Sumner relieved Flores of any obligation to force Prichard to comply with Drain Regulation 231 § 13.01, and he would issue a certificate of occupancy and compliance for the Adjoining Lot. [CR 174].

D.     FACTS RELATING TO PLAINTIFF'S APPEAL TO THE BOARD

On March 2, 2013 Plaintiff applied for a hearing before the Board to challenge the Flores's decision. In the hearing on May 9, 2013.the Board chairman said the standard of review was that Sumner had to prove the Adjoining Lot did not comply with Drain Regulation 231 § 13.01.[ *Id.*].

Flores presented as evidence an elevation survey of the Adjoining Lot. Sumner attempted to explain that the elevation of the lot by the time Prichard purchased the property was not the natural grade and not relevant to the natural flow of water across the boundary. The Board Chairman interrupted Sumner's testimony about the history of the two lots and said the Board members "were only interested in the present" [CR175].

Sumner (previously a Registered Professional Engineer in Texas) presented measurements he made with a surveyor's level of that show his lot slopes toward the Adjoining Property. Board members disregarded this on the stated grounds that Sumner is not a registered surveyor. These are the only measurements in evidence

that show the natural slope of either lot (direction of flow) near the boundary [CR 176].

Flores did not attempt to refute Sumner's testimony, but stated his belief that no water would overflow <u>from</u> the Adjoining Lot [To Sumner's]. Flores evaded a Board member's question of whether flow from Sumner's lot <u>to</u> the Adjoining Lot had been blocked [CR 175].

The Board denied Sumner's explicit request to cross examine Flores [CR 179].

E.    DAMAGE TO SUMNER

In less than six months from the date the certificate of occupancy and compliance was issued Sumner's lot significantly eroded where it had not in the previous four years. Events leading to this damage were almost identical to events that previously resulted in similar erosion that progressed over time to a more severe deprivation of the beneficial use of Sumner's Lot [CR 179-180].

**SUMMARY OF THE ARGUMENTS**

This case stems from Appellees' decision to issue a certificate of occupancy and compliance for the Adjoining Lot while improvements thereon do not comply with the Zoning ordinance and state law pertaining to surface water. If severance was improper then the other issues are not otherwise ripe. Severance was improper

because it divides a single cause of action that applies to all parties, soom claims are not the proper subject of separate lawsuits and involve the same facts and issues as the remaining action, the injury is indivisible and severance increases the chance of injustice and prejudice with no assurance of greater convenience. Sumner exhausted his remedies. His application for a hearing asks for the Board to review Flores "approval" of the work on the Adjoining Property". If he approves it, then issuing a certificate of occupancy and compliance is a ministerial duty so Sumner's appeal was equivalent to appealing a decision to issue a certificate of occupancy and compliance. Only the court can issue the writ. Any error or omissions in Sumner's request are not grounds for dismissal for want of prosecution. Water rights are constitutionally protected property interests that inhere in Sumner's ownership of Sumner's lot. The Board's decision was not supported by evidence, the Board excluded evidence, denied Sumner's request for cross examination and applied arbitrary procedures without notice. Certiorari review of the decision in the limited context of matters that arise solely in the Zoning Ordinance. A Board decision that conflicts with state law or constitutional rights is subject to collateral attack. Sumner has a right to trail in court on statutory and constitutional claims.

Flores does not have immunity from suits against him for vires acts in their official capacity. Governmental immunity does not bar claims for damages pursuant to Section 11.086 Texas Water Code or Article 1, section 17 of the United States Constitution because these laws creates an entitlement for payment.

## ARGUMENT AND AUTHORITIES

A.    LEGAL BACKGROUND, STANDARDS OF REVIEW

**a)  Standard of Review for Summary Judgment**

In a traditional motion for summary judgment proceeding, summary judgment is only proper if there is no genuine issue of material fact and movants are entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co*., 690 S.W.2d 546, 548 (Tex. 1985). The question is not whether the summary judgment proof raises fact issues as to required elements of the movants' cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the elements of the movants' cause or claim. *Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). A traditional summary judgment is subject to *de novo* review. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

### b) Standard for Reviewing Board's Decisions (Tex. Loc. Govt Code § 211.011)

The trial court must have found that the Board abused its discretion if it acted without reference to any guiding rules or principles or clearly failed to analyze or apply the law correctly. See *City of Dallas v. Vanesko*, 189 S.W.3d 769, 772 (Tex. 2006). Otherwise, the only issue is whether the Board's decision is supported by some evidence of substantive and probative character. *See Southwest Paper Stock, Inc. v. Zoning Bd. of Adjustments of the City of Fort Worth*, 980 S.W.2d 802, 805 (Tex. App.—Fort Worth 1998, pet. denied).

### c) Board's Standard for Review of Administrative Decisions

The authority of the Board to review decisions of administrative officials is described in Tex. Loc. Gov't Code § 211.009 (a) (1). Tex. Loc. Gov't Code § 2008 (e) authorized the Board to "adopt rules in accordance with any ordinance adopted under this subchapter". Neither Tex. Loc. Gov't Code § 211.009 (a) (1) nor the Zoning Ordinance mention a Standard of Review for the Board.

### B.    ISSUES ONE BY ONE

**Issue One**    Did the trial court err in ordering the case against Appellees to be severed from the original cause of action?

### a) A Single Cause of Action May not be Divided

"A motion to sever that divides a single cause of action into two parts is never proper, and should not be granted for the purpose of enabling the litigants to obtain

an early appellate ruling on the trial court's determination of one phase of the case".

See *Pierce v. Reynolds*, 329 S.W.2d 76, 78-79 (Tex 1959); *Duncan v. Calhoun City Nav. Dist.*, 28 S.W.3d 707, 710-711 (Tex App. –Corpus Christie 2000, pet. Denied); *Ryland Grp. v. White*, 723 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1986, orig. proceeding). Sumner's charges that Flores and the Board acted in concert with Prichard to violate Water Code § 11.086 a. [CR 13] and his rights pursuant to Article 1 section 17 [CR 15] are both single causes of action levied jointly against Prichard, the Board and Flores. Severance was improper.

**b)  Claims That are not the Proper Subject of Separate Lawsuits Cannot be Severed**

A court should deny a motion to sever claims that could not have been independently asserted in a separate lawsuit. See *In re State*, 355 S.W.3d 611, 614 (Tex. 2011); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007); *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). Sumner cannot independently assert his request in paragraph 77 of his Petition (CR 17) that the Court mandate Flores's participation in an action to secure the injunctive relief. Paragraphs 72 and 73 are requests the court to declare that the Appellants acted in concert with Prichard to violate section Water Code § 211.086 and Article 1 § 17 of the Texas Constitution respectively. Sumner cannot properly assert these claims in separate lawsuits because all Parties are necessary parties.

"Improper severance could effectively terminate the improperly severed claims as if they had been dismissed." See *Landers v. East Texas Salt Water Disposal Co.*, 248 S.W. 2d 731, 731 (Tex 1952).

**c)  Claims that Involve the Same Facts and Issues as Remaining Action Cannot Be Severed**

A court should deny a motion to sever if the claim to be severed is so interwoven with the remaining action that it involves the same facts and issues. See *In re State I.d. at* 614; *F.F.P. Operating Partners, L.P. v. Duenez I.d. at 693; F.P. Operating Partners, L.P. v. Duenez at 629, Owens Ryland Grp. v. White*, 723 S.W.2d 160, 161. All of Sumner's claims against Appellees are interwoven with Flores' arbitrary requirement that Prichard drain her property to the street, and subsequent issuance of a certificate of occupancy and compliance without which there would be no claims against the Appellees. Severance was improper because these claims are so interwoven that the facts and issues are identical.

**d)  Claims Should Not Be Severed if The Injury is Indivisible**

A court should deny a motion to sever claims against multiple defendants if the injury is indivisible. See *Landers v. East Texas Salt Water Disposal Co.*, 248 S.W. 2d 731, *Id.* at 734. The motion to sever must be denied because the prospective injury to Sumner is indivisible, in fact identical. Sumner argues later herein that Appellees can be held liable for retrospective as well as prospective

liability in this case, so the question arises as to how the monetary costs are allocated if Sumner prevails. If trial on the merits reveals that Flores' improperly required Prichard to drain her property to the street (CR 173 paragraph 14)[2] so as to increase her cost and make it impossible to prevent harm to Sumner, then Prichard is not a beneficiary but a casualty of Flores' ultra vires acts. Severance in that case would be prejudicial to both Prichard and Sumner.

**e)    Severance is Improper is it Creates Injustice, Prejudice or Inconvenience**

The court should deny a motion to sever if granting the motion will not do justice, avoid prejudice, or further the convenience of the parties or the court. See *In re State*, 355 S.W.3d 611, 613 (Tex. 2011); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007); *Owens v. Owens*, 228 S.W.3d 721, 726 (Tex App –Houston 14th Dist] 2006, pet dism'd). "…improper severance could effectively terminate the improperly severed claims as if they had been dismissed." *Landers I.d.* at 731" Sustaining severance could thereby make the rest of this appeal moot, it would also prejudice Sumner's case against Prichard. If the trial substantiates that Flores required her to drain her lot to the street, she could well argue that this required her at considerable cost to raise her lot to create necessary slope while making impossible to carry water from Sumner's unraised lot. The

---

[2] Plaintiff hopes it is understood in the context of the paragraph that it is Sweitzer (DESIGNER) who claimed Flores required the lot be drained to the street.

Jury will see two victims of a faceless government official, one of whom (Prichard) has already paid for her injury, and the other (Sumner) who wants her to pay for his as well. Severance would not do justice or avoid prejudice it would very likely do the opposite. While it could theoretically be more convenient the reverse could easily be true for the following reasons:

a. PLAINTIFF'S decision to appeal could be influenced by how the trial in the case against Prichard proceeds

b. Settlement with Prichard could moot some claims

c. Some identical legal questions will be decided in the pending appeal of Sumner's cause of action number 2010-45239.

Severance was improper because the chance it would be more convenient is less in likelihood and importance than the chance that it would cause injustice and prejudice. Because severance is improper it should be reversed, in which case it would no longer be final. The remaining issues in this appeal would not be ripe.

**Issue Two      Did Sumner exhaust his remedies before requesting Writ of Certiorari pursuant to Texas Local Government code 211.011?**

Appellees claims that Sumner did not exhaust his remedies because the "Board made no decision regarding the issuance of a Building Permit or an Occupancy and Compliance Permit" [CR 64, 116 – 117]. Sumner's Petition

includes a web address for the Zoning Ordinance [CR 171]. An application for a building permit is approved when Flores finds that the building plans comply with all zoning regulations [See *Zoning Ordinance § 01:02.02]. Issuing a certificate of occupancy and compliance is based on a separate section, Zoning Ordinance § 01.02.04 which says in relevant part that

> ……..such certificate shall not be issued until the structure is in compliance with the requirements stated below as to Issuance.
>
>> 01.
>> <u>Issuance</u>: The Office of the Building Official shall promptly issue a Certificate of Occupancy and compliance when it is determined that the building, structure, structural alteration or addition has been completed in such a manner as to comply with the provisions of this Comprehensive Zoning Ordinance.

So Flores is without authority to issue either the building permit or a certificate until he determines that the plans or the work complies with all regulations, but issuing the certificate of occupancy and compliance is a ministerial duty once he determines the property is in compliance. Therefore, any appeal of any decision by Flores that the Adjoining Lot complies with any single provision of the Zoning Ordinance is inherently an appeal to the legality of issuing a building permit or a certificate of occupancy and compliance while the violation exists.

From the court reporter's record it appears that the trial Court's decision to dismiss Sumner's request for writ of certiorari was based the belief that Sumner's failure to separately appeal the issuance of certificate of occupancy and compliance after the act of issuing it constituted a failure to exhaust his remedies.

> *MR. SUMNER*… But the fact is I did appeal the building – the issuance of the permit. [ referring to certificate of occupancy and compliance] I just appealed it before they --they actually issued it. To go back and –

> *THE COURT:* That wouldn't be right. It just absolutely wouldn't be right. And there's no -- there's lots of law on that. [RR 21].

Sumner finds no such law, and hereby challenges the Appellees to cite it if such exists. Zoning Ordinance § A1:03.03 says, in relevant part that "appeals shall be taken from the decisions of Administrative officials within a reasonable time not to exceed 90 days…." So it is the administrative decision, not the act itself that is appealed. This is consistent with the language of Tex. Loc. Gov't. Code § 211.009 (a). "Appellants say there is no evidence Sumner appealed the issuance of the building permit or the occupancy permit" [CR 64]. Sumner's application for a to the Board review concludes with this: "I, therefore appeal the Building Official's decision to approve the alternation of water flow and the drain on the property at 8302 Leafy Lane"[CR 125]. How does Flores "approve" the alteration of water

flow and the drain on the property if not by issuing a certificate of occupancy and compliance? Is this not just another way of saying the same thing; especially given that Sumner's Petition shows that his decision to appeal was predicated on learning of Flores' decision to issue a certificate and compliance [CR 174]? These are questions of fact that preclude Summary judgment on whether Sumner exhausted his remedies. Furthermore, Sumner's Petition shows that he learned of Flores' decision to issue a certificate and compliance on February 18, 2013 [CR 174], yet the certificate was not actually issued until May 19, 2013 [CR 116] more than 90 days later. So to appeal of the act of issuing the certificate less than 90 days after learning of Flores decision to comply with Zoning Ordinance § A1:03.03 was literally impossible. Had Sumner been required to file his application in ten days according to the new Board's rules [CR 154-155] and then file again after the certificate was actually issued, the entre approach would be unworkable in any real case. In summary, the only way Sumner could overturn Flores' decision to issue a certificate of occupancy and compliance at the local level was for the Board to decide to reverse Flores decision the subject property complies with all provisions of the Zoning Ordinance. Flores would then have been without authority to issue the certificate. Because the Board decided otherwise, Flores could only presume it was his ministerial duty to issue the certificate under Zoning Ordinance § 01.02.04.01. Sumner therefore believes the trial court erred if it dismissed the Writ

of Certiorari on grounds that Sumner did not exhaust his remedies and asks this court to so rule.

**Issue Three**  Did omissions in Sumner's prosecution of his request for Writ of Certiorari pursuant to Tex. Loc. Gov't Code 211.011 Justify Dismissal for Want of Prosecution?

Appellees claim Sumner's request for Writ of Certiorari should be dismissed for want of prosecution because "no Writ of Certiorari has been directed to the BOA to review the BOA decision" [CR 115]. Sumner is under the impression that it is the Court that issues the order for Writ of Certiorari since he has no authority to force the Board to submit its record the Court. Sumner did not attach a proposed order to his original petition, but he did attach an order to his Third Amended Original Petition (Sumner's Petition) that he filed with his reply to Appellees' motions. It must be clear from that and from Sumner's reply to Appellees' Motion to Dismiss Sumner's Writ of Certiorari [CR 201] that any errors and omissions in Sumner's prosecution of this request this was unintentional, and Sumner will make necessary corrections as directed. That said, Sumner has no indication that the trial Court based its decision to order dismissal on the grounds of want of prosecution, and the Court Reporters Record indicates that dismissal was based at least in part on the Appellants claim that Sumner did not exhaust his remedies [RR 21].

**Issue Four**    Does Plaintiff Have a Protected Property Interest?

ln their Motion for Summary Judgment Appellees cite *Horton v. City of Smithville*, 117 Fed. Appx. 345 (5th Cir. Tex. 2004), *Sumner v. Board of Adjustment of City of Spring Valley Village*, Civ. A. No H-12-12-551, 2013 WL 1336604, slip op. at 5 (S.D.Tex. Mar. 29, 2013) and *Develo Concepts* 688 S.W.2d 790 (1984) [CR 63] to support their assertion that "Sumner has no property interest in the application of the City's building ordinances to Sumner's property". That turn of phrase does not address Sumner's actual claims that the Appellants' illegal and ultra vires miss-application of the Zoning Ordinance violated his property interests that do not arise not in the zoning ordinance, but in the Texas Water Code and the Texas Constitution. In *Horton Id*. the court's explanation that discretionary statues do not give rise to constitutionally protected interests (*Id.* at 347-348) was relevant because the plaintiffs asserted property interest (investment value and peaceful use and enjoyment of their home *Id*. at 347) arose only in the City's alleged failure to enforce its own ordinance, where the City officials have broad discretion, not from any constitutional or statutory entitlement where City officials have no more discretion. *Board of Adjustment of City of Spring Valley Village*, *Id.* is inapposite

for the same reason.[3] *Develo Concepts* 688 S.W.2d 790 (1984) is inapposite because the court found that the appellants had no ownership or contractual interest in the property. *Id.* at 792.

Water rights do not arise in the Zoning Ordinance, and they are constitutionally protected Under Texas law. See *City Of Wichita Falls, Plaintiff In Error, Vs. W. M. Mauldin, et ux., Defendants in Error.* 39 S.W.2d 859 at 861; 1931 Tex. App. Lexis 2064, holding as follows:

> Section 17, Art. 1 of the Constitution provides that "no person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless with the consent of such person."…The diverting of water from its natural channel, and throwing it upon the property of another, to his prejudice, creates a liability for damage against him who does so, in favor of the party so prejudiced

In his *Private Real Property Rights Preservation Act Guidelines*[4] Texas Attorney General Greg Abbott, wrote in relevant part, the following:

---

[3] After Sumner amended his complaint to more clearly assert that his Deed Restrictions were his constitutionally property interest the court set an oral hearing on that question. Sumner moved for dismissal for other unstated and unrelated reasons so the court never ruled on that.

[4] *https://www.texasattorneygeneral.gov/AG Publications/txts/propertyguide2005.shtml*

"End Note 1: "Private real property" means an interest in real property recognized by common law, including a groundwater or surface water right of any kind that is not owned by the federal government, this state, or a political subdivision of this state."

End Note 8: Physical invasions of property, as distinguished from physical occupancies, may also give rise to a "taking" where the invasions are of a recurring or substantial nature. Examples of physical invasions include, among others, flooding and water related intrusions and overflight or aviation easement intrusions.

In Texas the law controlling surface water generally derives from the Civil Law Rule[5] See *City of Houston v. Renault, Inc.,* 431 SW 2d 322, 326 (Tex 1968). In that case the plaintiff based his claims on violations Article 1 § 17 and Vernon's Ann. St. 7589a, the predecessor of Texas Water Code 11.086. Arguments centered on the factual circumstances under which liability would exist. The constitutional property interest was taken for granted by the court. The decision reveals that interfering with the flow of surface water is considered to be a physical invasion of one's property *Id* at *325. "The hallmark of a protected property interest is the

---

[5] See "D. H. Cole, Liability Rules for Surface Water Drainage A Simple Economic Analysis" http://www.repository.law.indiana.edu/cgi/viewcontent.cgi?article=1863&context=facpub  This rule is expressed by the maxim, aqua currit, et debet curerer, ut solebat es juie natural (water runs and should run, as it is wont to do by natural right) See Sheldon J. and Maloney, Frank E., "Diffused Surface Water: Scourge or Bounty?" (1968). http://lawlibrary.unm.edu/nrj/8/1/04_maloney_diffused.pdf

right to exclude others" See, *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Also see *Dennis Davis, et al. v. Steven L. Johnston, et. al*; NO. 03-10-00712-CV 2012 Tex. App. LEXIS 5249, HN5. Holding

> "Similarly, those who grant easements should be assured that their conveyances will not be construed to undermine private-property rights, like the rights to exclude others or to obtain a profit, any more than what was intended in the grant. …..A property owner's right to exclude others from his or her property is recognized as one of the most essential sticks in the bundle of rights that are commonly characterized as property"

"Water rights are long recognized as a form of property protected by the Fifth Amendment and other laws". See *James A. Hansen v. The United States of America*; 65 Fed. Cl. 76; 2005 U.S. Claims LEXIS 93; 60 ERC (BNA) 1141 [see HN24].

Sumner raised genuine issues of material fact that suggest the issuance of a certificate of occupancy and compliance was an ultra vires act without which the violations of his property rights that arise in the Texas statues and the constitution that would not have been permitted to continue. See for example these passages in Sumner's Petition. See for example paragraphs 13 [CR 172-3], 35 [CR 179], 43 [CR 181], 54 [CR 183] and 66 [CR 185].

These genuine issues of fact preclude a Summary Judgment on grounds that he has no protected property interest.

## Issue Five    Did Sumner Receive the Necessary Elements Due Course of Law?

The fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U. S. 545, 552 (1965).[6]. Appellees attempt to frame Sumner's right to due process for all claims to his right for Certiorari review pursuant to Tex. Loc. Gov't. Code § 211.011. Because trial court terminated the hearing on the Board's motions with her conclusion that Sumner did not exhaust his remedies [RR 21] Sumner wonders if it accepted this at face value. Appellees cite Tex. Loc. Govt. Code Ann § 211.001 and 211.009 (a) to support their assertion that "the only judicial remedy to challenge a BOA decision is a writ

---

[6]. The Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property See, *e. g., Cleveland Board of Education* v. *Loudermill,* 470 U. S. 532, 542 (1985) (" `[T]he root requirement' of the Due Process Clause" is " `that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest' "; hearing required before termination of employment (emphasis in original)); *Parham* v. *J. R.,* 442 U. S. 584, 606-607 (1979) (determination by neutral physician whether statutory admission standard is met required before confinement of child in mental hospital); *Memphis Light, Gas & Water Div. v. Craft,* 436 U. S. 1, 18 (1978) (hearing required before cutting off utility service); *Goss* v. *Lopez,* 419 U. S. 565, 579 (1975) (at minimum, due process requires "*some* kind of notice and . . . *some* kind of hearing" (emphasis in original); informal hearing required before suspension of students from 128*128 public school); *Wolff* v. *McDonnell,* 418 U. S. 539, 557-558 (1974) (hearing required before forfeiture of prisoner's goodtime credits); *Fuentes* v. *Shevin,* 407 U. S. 67, 80-84 (1972) (hearing required before issuance of writ allowing repossession of property); *Goldberg* v. *Kelly,* 397 U. S. 254, 264 (1970) (hearing required before termination of welfare benefits).

of certiorari [CR 65]. The Board makes the same argument to defeat Sumner's request for Declaratory Judgment [CR 119-120], but what Tex. Loc. Gov't Code 211.009 (a) actually says "The zoning board of adjustment may hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement **of this subchapter or an ordinance adopted under this subchapter** [emphasis added]. "This subchapter" means Local Government Code, Title 7, Subtitle A, Chapter 211, subchapter A. "General Zoning Regulations". So the Board's authority and Flores' authority is limited to Zoning Regulations. Appellants assert that "This court lacks subject matter jurisdiction to issue a declaratory judgment that challenges the decision of the BOA" [CR 65]. To support that assertion they cite *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 to, but the very next page of that same decision says "A party may obtain judicial review of an administrative action if it adversely affects a vested property right or otherwise violates a constitutional right." *Id.* at *614. Also see *W. Tex. Water Refiners, Inc. v. S & B Beverage Co.*, 915 S.W.2d 623, 626 (Tex. App.—El Paso 1996, no writ) holding that:

> A ZBA must act only within its specifically granted authority. . A city's board of adjustment derives its power both from the statute and the city ordinance establishing it and defining its local function and powers. See TEX.LOC.GOV'T CODE ANN. § 211.008-.009; cf. *Board of Adjustment v.*

*Stovall*, 218 S.W.2d 286, 288 (Tex.Civ.App.-Fort Worth 1949, no writ). A board of adjustment must act within the strictures set by the legislature and the city council and may not stray outside its specifically granted authority. Any action exceeding this authority is null and void and subject to collateral attack.

More broadly, the due course of law for overturning a ruling of an administrative agency (the Board for example) that violates the constitutional rights of a private party was addressed in *Marrs v. R.R. Comm'n*, 142 Tex 293, 303 (Tex 1944) which says in relevant part:

It appears to be well settled that in suits brought to set aside an order, rule, or regulation of an administrative agency on the ground that it violates one's constitutional rights, such as the confiscation of his property or the denial of equal protection of the law, the law contemplates an independent review of the facts by the court as in other civil actions. *Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 696; *Crowell v. Benson*, 285 U.S. 22, 60, 52 Sup.Ct. 285, 598; *Ohio Valley Water Co. v. Ben Avon Borough*, 253 U.S. 287, 64 L.Ed. 908, 52 Sup.Ct. 527. *Id* at 303 "We hold that in such a case our Constitution guarantees a trial of such issues as in other civil cases…. The orders heretofore entered will be held to be illegal; and, of course, the Commission will have to enter substantially different orders which will not arbitrarily discriminate between the parties and will not unlawfully deprive petitioners of their property." *Id.* at 307

"We perceive no legislative intent to exclude municipalities from section 11.086(a) of the Water Code" *Abbott v. City of Princeton Id.* As described above, much of the discussion in the decision in *City of Houston v. Renault, Inc. Id.* centered on the factual circumstances under which a government entity would be liable to a private party. The court cited *City of Waco v. Roberts*, 121 Tex. 217, 48 S.W.2d 577 where the Jury found the City to be negligent after being instructed by the court that "to be a proximate cause of an event it must have been reasonably anticipated by a person of ordinary prudence, in the exercise of ordinary care, that the injury or some similar injury would occur"

## a) Due Course Of Law, Zoning

1. The Court must find that the Board abused its discretion if it acted without reference to any guiding rules or principles or clearly failed to analyze or apply the law correctly. *See City of Dallas v. Vanesko*, 189 S.W.3d 769, 772 (Tex. 2006). Our abuse-of-discretion review is necessarily less deferential [than with respect to a zoning board's factual findings] when considering any legal conclusions made by the zoning board and is similar in nature to a de novo review. City of Dallas v. Vanesko, *I.d.* The Board in this case acted without reference to any guiding rules or principles and clearly failed to analyze or apply the law correctly. Sumner's Petition and his reply to Appellees' motions [CR 201-217] describe the elements procedural due process deprived to Sumner in the Board

hearing. Sumner claims the standard of review used by the Board was improper (CR 175). Sumner's complaint in this regard is not that the Board applied the wrong standard of review in the abstract[7] it is that the chairwoman's instruction that Sumner had to prove the property violates section the Zoning Ordinance § 13.01 [CR 175] when Sumner's application for a Board review says "I, therefore appeal the Building Official's decision to approve the alternation of water flow and the drain on the property at 8302 Leafy Lane." [CR 125] As pointed out in Issue Two above, Tx. Loc. Gov't Code § 211.009 (a) (1) and Zoning Ordinance § A1: 03.03 authorize the Board to review administrative decisions, not the actions that ensue from those decisions. The difference in this and the charwoman's charge, is the difference between proving that Flores' did not meet his responsibility under Zoning Ordinance § 01.02.04.01 for determining whether the property complies with the Zoning Ordinance § 13.01 and proving it does not comply. This is not just word play. Sumner's Petition says "That decision cannot have been properly made

---

[7] Tx. Loc. Gov't Code § 2008 (e) authorizes the Board to "adopt rules in accordance with any ordinance adopted under this subchapter". Standards of review for Board hearings are not mentioned in the Zoning Ordinance or in the Tex. Loc. Govt Code. Since the Board "may not stray outside its specifically granted authority" (see *W. Tex. Water Refiners, Inc. v. S & B Beverage Co Id*. at 626), one must presume the normal standard is the one used in civil trials; preponderance of the evidence. All Article 4, section 7 of the Board's purported rules [CR 156] says says about standard of review is that "The applicant must present evidence to support the action requested by the Board……." This suggests "some credible evidence standard" which is lower than "preponderance of the evidence. [See http://en.wikipedia.org/wiki/Legal_burden_of_proof].

if Flores incorrectly interpreted or applied the regulation in question [CR 173]. So this really comes down to whether there was any evidence to support Flores decision. Appellees claim that "Sumner does not contend that there was no evidence to support the BOA's decision (CR 119). What Sumner says is "It is prima facie that he cannot have determined that the lot was in compliance with Drain Regulation 231§ 13.01 if Plaintiff's [Sumner's] charge that he did not consider flow in both directions is true. This unrebutted charge is the essence of Plaintiff's complaint" [CR 179]. The definition of "prima facie" is that the charge is sufficient to be deemed true unless it is rebutted. Flores failure to rebut the Sumner's claim, even when directly questioned about this and the Board's failure to press him on this question [CR 175-176] is tantamount to saying there was no evidence to support the Board's decision on what was "the essence of Sumner's complaint" [CR 179]. The law requires that some evidence is required to support the Board's decisions. *See In re Barber*, 982 S.W.2d 364, 368 (Tex. 1998). Sumner has also claimed evidence was excluded without a rational basis (CR 175). Under an abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. *See Texas Dept. of Heath v. Buckner,* 950 S.W. 2d 216, 219 (Tex. Civ. App.–Forth Worth 1977, no writ). The improper exclusion of evidence can therefore be fatal to an argument. Appellees acknowledge Sumner complaint of the "presiding officer's 'improper exclusion of

evidence" [CR 118], but they then redefine this as "conflicting evidence" [CR 119], and go on to say "some evidence supports its decision" [*Id*.]. So, there are real disagreements about a) whether evidence was "conflicting" or "excluded", and b) whether or not there is any evidence that supports the Board's decision. The purpose of Certiorari Review is to decide such fact questions, so these disagreements are genuine issues of material fact that preclude summary judgment.

Sumner also claims his request to cross examine Flores was denied. [CR 179]. He has a right to cross examination under Texas law. In Richardson v. City of Pasadena, 513 S.W.2d 1, 4 (Tex. 1974), the Texas Supreme Court explained: "The right to cross examination is a vital element in a fair adjudication of disputed facts. The right to cross examine adverse witnesses and to examine and rebut all evidence is not confined to court trials, but applies also to administrative hearings."

In City of Arlington v. Centerfolds, Inc., 232 S.W.3d 238, 250–251 (Tex. App.—Fort Worth 2007, writ ref'd n.r.e.), the Court of Appeals further explained the "rudiments of fair play" required in administrative proceedings, stating:

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). Cross-examination is a safeguard essential to a fair trial and a cornerstone in the quest for truth; longstanding principles of our

jurisprudence recognize the right and necessity of full and complete cross-examination. *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex.1987). The right to cross-examine a witness is a substantial one, and it is error to so restrict it as to prevent the cross-examining party from going fully into all matters connected with the examination in chief. Id. "The right to cross[-] examine adverse witnesses *and to examine and rebut all evidence* is not confined to court trials, but applies also to administrative hearings." *Richardson v. City of Pasadena*, 513 S.W.2d 1, 4 (Tex.1974) (emphasis added). See also *J. B. Advertising, Inc. v. Sign Board of Appeals of City of Carrollton*, 883 S.W.2d 443, 448–49 (Tex. App.—Eastland 1994, writ denied); *Board of Adjustment of the City of San Antonio v. Willie*, 511 S.W.2d 591, 594 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.).

Appellees attempt to apply the Board's previously undisclosed "Rules of Procedure" [CR 100-107] to defeat Sumner at every turn. For example, they attempt to deflect Sumner's charge of gross negligence, bad faith or malice by claiming they were just following these rules [CR 119]. However the very fact this is the first time these rules appeared even though Sumner has already complained of three different violations in a separate lawsuit [CR 177] suggests that they may be deliberately concealing these to defeat appeals. The Board's letter to applicants [CR 197-198] show acts as a decoy to dissuade applicants from looking further for procedures. Inherent in raising this issue is the question of intent. Was this

deliberate, and if so was the Board is more interested in protecting its ability to be arbitrary than serving the public interest? This is a genuine question of material fact.

Tx. Loc. Gov't Code § 2008 (e) authorizes the Board to "adopt rules in accordance with any ordinance adopted under this subchapter", so any procedures the Board adopts must find support in the Standards of review for Board hearings are not mentioned in the Zoning Ordinance. The Court must find that the Board abused its discretion if it acted without reference to any guiding rules or principles. *See City of Dallas v. Vanesko Id.* 772. The Board "may not stray outside its specifically granted authority" (see *W. Tex. Water Refiners, Inc. v. S & B Beverage Co Id*. at 626). Article 4, Section 6, of these "Rules of Procedure" [CR 100-107] assigns the presiding officer the power to arbitrarily decide whether cross examination will be indirect and in writing or direct, and which questions will be allowed. Traditional cross examination includes, and in federal court is limited to questioning based on prior testimony of witness for the adverse party [CR 103]. Requiring a complaining party to create and submit written questions and motions during an oral hearing is impossible in advance, completely unnecessary and unduly burdensome to do live, especially given time limits set out elsewhere in these procedures. The Board's purpose is to review the legality of decisions of

administrative officials, but in Article 6 the Board effectively grants itself the power to legislate and create contracts [CR 104]. Article V. Section 4 [CR 103] gives the Board power to set arbitrary and unreasonable time limits as does Article 2, section 3 [CR 100-101]. All of the above are arbitrary and abusive, and none are supported in the Zoning Ordinance as required by Tex. Loc. Govt. Code 211.008 e.. or "any other guiding principles. Even if these Rules of Procedure are deemed valid, Sumner raised a genuine issue of material fact as to whether he had notice of such rules. It is likely that anyone contemplating administrative review would look first to the Zoning Ordinance and very unlikely anyone who read it would discover in ten days what it took years to disclose to Sumner. Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *See Univ. of Texas Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Calvert,* 394 S.W.2d at 657. Another implicit question of fact is whether the Board's acceptance of Sumner's fee and conduct of the hearing at the expense of taxpayers, the time of everyone involved nullify any complaint that that Sumner's application was untimely. As the City's top zoning official, he would surely be one of the first to know if his decisions are challenged, and he would know when he informed Sumner of his decisions. Does

he or the Board have some obligation to inform Sumner that his application is untimely before it ends up in court? Whether the Board's Procedures are arbitrary or unreasonable are questions of law, and if this court finds that to be true, it has the power to overrule any decision on that basis.

Sumner has raised genuine issues of material fact that should preclude Summary judgment based on Sumner's failure to follow these procedures. Did Tx. Loc. Gov't Code § 2008 (e) constitute constructive notice of these Procedures, or would the Board's letter to applicants [CR 197-198] work as a decoy, and is this intentional in view of the Board's failure to disclose these procedures sooner? Does the delay in disclosing these procedures support Sumner's charges of bad faith, discrimination and malice? Are those charges inherently factual determinations? Did the holding of a hearing nullify the Board's right to now complain of Sumner's application was untimely?

**Issue Six      To what extent are the Appellees immune from suit and liability for monetary damages?**

The Texas Supreme Court reviewed sovereign and governmental immunity in *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) holding in relevant part as follows:

> "While governmental immunity generally bars suits for retrospective
> monetary relief, it does not preclude prospective injunctive remedies in

official-capacity suits against government actors who violate statutory or governmental provisions." *Id* at \*368…… "…..where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments." *Id*. at \*371… it is clear that suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money.. To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id*. **at \*372** "For example, a claimant who successfully proves a takings claim would be entitled to compensation, and the claim would not be barred by immunity even though the judgment would require the government to pay money for property previously taken. Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex.2001) (noting that governmental immunity 'does not shield the State from an action for compensation under the takings clause'); cf. WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3524.3 ('If the state cannot invoke its immunity, retroactive relief against it is allowed.')." *Id*. at \*376

Sumner claims that the City took his property and gave it to Prichard in violation of Article 1 §§ 17 and 19 of the Texas Constitution (CR 183-184). It goes

without saying that an illegal act cannot serve the "public use" requirement of Article 1 § 17. There is a long line of jurisprudence holding that the corollary to the government's right to take property for public purpose is that it is forbidden from taking property from one property owner without public purpose or to confer a benefit on a private party. *See Coastal States Gas Producing Co. v. Pate*, 309 S.W.2d 828, 833 (Tex. 1958); *Marrs v. R.R. Comm'n*, 177 S.W.2d 941, 949 (Tex. 1944); *Davis v.City of Lubbock*, 326 S.W.2d. 699, 704 (Tex. 1959), *Borden v. Trespalacios Rice& Irrigation Co.*, 86 S.W. 11, 14 (Tex. 1905); *Whittington v. City of Austin*, 174S.W.3d 889, 897 (Tex. App.—Austin 2005, writ ref'd n.r.e.). The legal question of the government's liability for retrospective damage payments in a taking with no public purpose was succinctly addressed in *Montgomery v. Carter County,* 226 F.3d 758-769 (6th Cir. 2000): "Of course, if a landowner can prove that her land was taken for a strictly private use, "desist" or "pay" would not be an either/or proposition for the local government; it would have to do both."

In *Bennett v. Planning Comm'n, City of Bryant, Ark.*, No. 4:09-CV-00315, 2010 WL 1417971, at *1–2 (E.D. Ark. Mar. 31, 2010), a case that is conceptually analogous in several ways to the one before this Court, the plaintiffs brought a §1983 claim against the City of Bryant, Arkansas city planning commission and city officials for subdividing, and proposing to approve the rezoning of a lot for

non-residential use within a platted subdivision that was governed by a bill of assurance, or deed restrictions that limited the use of all lots to residential uses and prohibited the further subdivision of lots. The plaintiffs alleged that they were never given notice of, or the opportunity to oppose the petition for the subdivision of the lot, in violation of their constitutional procedural and substantive due process rights because the restrictions and covenants contained in the bill of assurance (no subdivision of lots; residential use only) created property interests owned by plaintiffs. Id. at *2. The plaintiffs further alleged that the city officials had constructive knowledge of the restrictions in the recorded covenants, and breached those restrictive covenants in approving the re-plating of the lot and in proposing to approve the rezoning of the lot to commercial use. Id. at *2–3. The court decided it had jurisdiction to hear the plaintiff's constitutional claim.

In *Ridge Line Inc,* 346 F.3d 1346 -1356 the Federal Circuit addressed the question of when the government is accountable to a private party for a Public Taking and instructed the trial court to "determine whether the increased runoff on the [landowner's] property was the predictable result of the government action [in constructing a building]." *Resource Investments, Inc. and Land Recovery, Inc v. The United States of America*, 85 Fed. Cl 447; 2009 US Claims Lexis 11elaborated on interpreting that requirement.

This sort of predictability was not whether the government had actually foreseen the harm to the landowner's property, but instead whether the construction "initiated a series of events all . . . in their natural order, by which the landowner was deprived of the beneficial use of portions of its land."

While these two cases concern the circumstances under which the government is accountable to damaged party in cases of takings for public use, the same would logically apply in a taking for private use for which the remedy is different as described in *Montgomery v. Carter County* Id. at 769.

In Texas, only the County court has jurisdiction for claims of taking for public use, but this is because the special questions that arise in determining "just compensation" In this case, the issue comes down to restoring Sumner to the condition that existed before the taking occurred. Sumner believes this there is an analogy to a number of federal case, including federal cases like *Samad v. City of Dallas*, 940 F.2d 925 and *Fideicomiso de la Tierra v. Fortuno*, 604 F.3d 7 (1st Cir, 2010) holding:

> We agree with the vast majority of circuits to address this issue, which have
> held that this ripeness requirement of going through state procedures does not

apply to claims that a taking was not for a "public use.[8].............That is so because "[p]rivate-use takings . . . are unconstitutional regardless of whether just compensation is paid," and, unlike just compensation claims, state proceedings to determine appropriate compensation would not obviate the constitutional question. *Montgomery*, 226 F.3d at 766-67".

The decision in *Abbott v. City of Princeton*, *Id*. applies in Sumner's claims under section 11.086 of the Texas Water Code "When the water statutes were codified and the Code Construction Act was adopted, an entire new statutory scheme was implemented which destroyed the proposition that the sovereign is not included unless specifically named. Clearly, the Code Construction Act was calculated to abrogate this rule insofar as section 11.086 is concerned"

---

[8] see *Fideicomiso de la Tierra v. Fortuno*, 604 F.3d 7 (1st Cir, 2010); *Dhalen v. Shelter House,* No. 09–1909, 2010 WL 1050411, at *3 (8th Cir. March 24, 2010);;*Carole Medina LLC v. New Jersey Transit Corp.,* 550 F. 3d 302, 308 (3rd Cir, 2008); *Montgomery v. Carter County*, 226 F.3d 758 (6th Cir. 2000)

# PRAYER

For the foregoing reasons, Appellant requests that this Court remand this case to the Trial Court for further determination.

Respectfully subitted

By: _____

Glen Sumner Appellant , Pro Se.
E-Mail: glenr.sumner@yahoo.com
8306 Leafy Lane, Houston Texas 77055
Telephone: 713 973 7285

## CERTIFICATE OF SERVICE

I hereby certify that, a true and correct copy of the forgoing Brief of Appellant Glen Sumner was hand delivered by electronic filing to the all council of record on this 23nd day of April, 2015 as follows:

Andrea Chan
Olson & Olson, L .L.P.
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019-2133

_____
Glen R. Sumner, Pro Se

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9, I certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 10,274 words in its entirety, including all parts exempted by Tex. R. App. P. 9.4(i)(1).

_____
Glen R. Sumner, Pro Se